Frederick W. Schmalz (who sues for the benefit of the members of the Union Hat Makers' Association of Newark, New Jersey), appellant,

Edwin Wooley and Frederick S. Crane, partners, &c., respondents.

[Filed November 14th, 1898.]

1. The "Act to provide for the adoption of labels, trade-marks and forms of advertising by associations or unions of workingmen, and to regulate the same," passed in the year 1889, and the acts on the same subject passed in 1892 and 1895 (*Gen. Stat. p. 3673 et seq.*), do not violate the constitutional interdict against the passage of special laws granting exclusive privileges.

2. The title of an act passed March 21st, 1892, is "A further supplement to an act entitled 'An act to protect trade-marks and labels.'"—*Held*, that the title constitutionally expressed the object of the law, the protection of trade-marks and labels, although in fact there was no prior act entitled "An act to protect trade-marks and labels."

3. According to general principles, a workman, or a number of workmen engaged in the same branch of industry and banded together for their mutual profit in the pursuit of their common vocation, may acquire a right of property in a trade-mark designed to distinguish their workmanship from that of other persons, and a trade-mark so owned is entitled to the same protection as other trade-marks.

Schmalz *v.* Wooley.

On appeal from an order advised by Vice-Chancellor Stevens, whose opinion is reported in *Schmalz* v. *Wooley, 11 Dick. Ch. Rep. 649.*

*Mr. Joseph A. Beecher,* for the appellant.

*Mr. William B. Guild,* for the respondents.

The opinion of the court was delivered by

DIXON, J.

The bill in this case was filed in February, 1897, by the president of the Union Hat Makers' Association of Newark, for the use and benefit of all the members thereof, to enjoin the defendants from using a counterfeit trade-mark and label made in imitation of a trade-mark and label which had been adopted and filed by the said association in accordance with the provisions of the several acts of the legislature passed in the years 1889, 1892 and 1895. *Gen. Stat. p. 3678 et seq.* The defendants demurred to the bill, and, the demurrer having been sustained, the complainant appeals.

The act of 1889 is entitled "An act to provide for the adoption of labels, trade-marks and forms of advertising by associations or unions of workingmen and to regulate the same." It provides (section 1) that it shall be lawful for associations and unions of workingmen to adopt, for their protection, labels, trade-marks and forms of advertisement, announcing that goods manufactured by members of such associations or unions are so manufactured; (section 4) that every such association or union adopting a label, trade-mark or form of advertisement as aforesaid, shall file the same in the office of the secretary of state, by leaving two copies, counterparts or *fac similes* thereof, with said secretary; and (section 5) that every such association or union adopting, &c., may proceed by suit in the courts of this state to enjoin the manufacture, use, display or sale of any counterfeit of their label, trade-mark or form of advertisement, and that all courts having jurisdiction thereof shall grant such an injunction.

Schmalz *v.* Wooley.

The demurrants do not deny that the bill presents a case in conformity with this act, except in this respect, that under the act the bill should be filed by the association or all its members, and not by one member alone. In our opinion the act empowers the association to proceed by suit, making it for this purpose a *quasi*-corporation, and therefore does not of itself entitle a single member to maintain the action. But this objection is obviated by section 4 of the act of 1892, if valid, which provides for the bringing of such proceedings in the name of any member duly authorized by the association or union for that purpose. We are therefore brought to the main questions raised as to these statutes.

The demurrants contend that the act of 1889 violates that provision of the constitution (article 4, section 7, paragraph 11) which forbids the passage of private, local or special laws granting to any association, corporation or individual any exclusive privilege, immunity or franchise whatever. Their position is that, as the privileges of this act are confined to associations or unions of workingmen for the protection of goods manufactured by their members, and are not offered to other workingmen who may not choose to form associations or unions or to persons generally, the privileges are therefore exclusive and the act is special.

We do not agree to this conclusion.

All the legislation of the state respecting societies, associations and corporations is based upon the idea that privileges which are denied to single individuals may be conferred upon groups of persons, and nothing in the constitution was intended to subvert this doctrine. If the legislature offers to any class of persons privileges peculiarly appropriate to their class, on condition that several of them shall unite for the purpose of accepting and exercising them, the constitution will not thereby be infringed. The privileges of this act are offered to all workingmen engaged in the manufacture of goods who thus unite, and they relate to goods of every description manufactured by them. Certainly, workingmen engaged in the manufacture of goods constitute a distinct class of persons, and there

20

is a manifest appropriateness in enabling any of them who comply with the act to provide and protect a mark distinguishing the products of their labor and skill. Nor is it at all necessary that a similar privilege should be given to those who are not workingmen, but are only employers of workingmen. Such persons stand in a different class with respect to the exercise of those faculties which the legislature intended to foster.

We think this act is constitutional.

The act of 1892, with its amendment of 1895, seems not to be exposed to the objection just considered, for their provisions extend to any persons and any association or union of workingmen adopting a label or trade-mark to distinguish any merchandise or product of labor made, packed or put on sale by such persons, association or union. But these acts are assailed on the ground that their titles do not comply with that provision of the constitution (article 4, section 7, paragraph 4) which declares that

"to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

The title of the act of 1892 is "A further supplement to an act entitled 'An act to protect trade-marks and labels.'" That of the act of 1895 is "An act to amend an act entitled 'A further supplement,'" &c., quoting the title of the act of 1892. The objection urged is that there existed no act entitled "An act to protect trade-marks and labels," and therefore entitling these acts as supplements or amendments of such an act was misleading. But, conceding this, the inquiry is not concluded. The question still remains, was the title misleading as to the object of the act—did not the title, in spite of its false assumption of the existence of a prior statute, fairly express the object of the proposed legislation?

On reading the act it will be perceived that its object is to protect trade-marks and labels, and that for this purpose it is a complete and independent enactment. To express that object in the title no particular form of words is required, nor is it

Schmalz v. Wooley.

necessary that the object should be expressed with precision.    It is enough if the title be so phrased as to inform the legislators and the public of the subject-matter of the act.    As was said by Mr. Justice Depue in *Grover* v. *Ocean Grove, 16 Vr. 399, 404,* " the standard uniformly adopted for determining whether the legislature has complied with the constitutional requirement is whether the title of the act is such that by it the members of the legislature are informed of the subject to which the act relates and the public notified of the kind of legislation that is being considered." *Bumsted* v. *Govern, 18 Vr. 368 ; S. C. on error, 19 Vr. 612.*    Tested by this standard, these titles seem to be sufficient.    They clearly indicate that the subject of legislation is trade-marks and labels and that the purpose is to protect them.    True, they state that this is to be done in the form of supplements, but that does not affect the object of the statutes. In our legislation a formal supplement to an act is not necessarily a statute which supplies defects in its predecessor.    It may be one that abrogates the preceding enactments and substitutes radically different provisions.    Hence the mere calling of an act a supplement to another designated act expresses nothing of its object.    Thus, if the title were "A supplement to assembly bill No. 10, which became a law on July 4th, 1876," the constitutional requirement would not be satisfied because the title would not at all express the object, while the title "An act to define more accurately the crime of murder of the first degree" would fully express the object, although the act, in form and substance, were only a supplement to section 68 of the Crimes act.    Entitling an act a supplement to a former act complies with the constitution only when so much of the original title is recited as expresses the object of the proposed law, and if that object be expressed the constitution does not defeat the statute merely because it is erroneously styled a supplement.

We therefore conclude that these acts are valid so far as they are necessary to sustain the complainant's bill.

We also think that upon general principles the substance of the bill is sufficient.

It alleges that a company of journeymen hatters, calling themselves the Union Hat Makers' Association of Newark, New Jersey, have, in common with similar associations formed elsewhere, adopted a certain label or trade-mark of which the following is a copy:

that for ten years last past they have used said label or mark to designate and distinguish the hats made by members of the association by affixing it upon each of those hats, and that for about three years last past the defendants have used a fraudulent imitation of that mark upon the hats made and sold by them, thereby deceiving the public, violating the rights of the members of the association and depriving them of large profits which they would otherwise have gained.

These allegations seem to present a case of inequitable infringement of the association's right of property in its trade-mark or label. In *McAndrew* v. *Bassett, 4 De G., J. & S. 380,* Lord Westbury said : " The essential ingredients for constituting an infringement of that right probably would be found to be no other than these, first, that the mark has been applied by the plaintiffs properly—that is to say, that they have not copied any other person's mark and that the mark does not involve any false representation ; secondly, that the article so marked is actually a vendible article in the market, and thirdly, that the defendants, knowing that to be so, have imitated the mark for the purpose of passing in the market other articles of a similar description." These views received the approval of Lord Cairns, sitting in the court of appeal, in *Maxwell* v. *Hogg, L. R. 2 Ch.*

Schmalz v. Wooley.

*App. 307, 314,* and accord with the great weight of authority on this much-litigated subject. The present bill clearly sets out the adoption and proper application of the mark by the association and its fraudulent imitation for the interdicted purpose by the defendants. It is not so explicit as to the second ingredient mentioned by the learned chancellor, but the court does not need to be told that hats made by a company of journeymen hatters during ten years were actually vendible articles in the market; so much will be inferred.

But the objection urged by the defendants against the bill is that it does not allege, and the court cannot infer, that the journeymen owned the hats made by them, and it is insisted that ownership of the article to which the trade-mark is affixed is necessary to the acquisition of a right in the mark. To support this claim *Schneider* v. *Williams, 17 Stew. Eq. 391,* is cited. Some expressions in the opinion of the able judge who decided that case certainly give countenance to the present objection, but on consideration I think those expressions will appear to be unwarranted. Thus in defining the means by which a person will acquire an exclusive right to a trade-mark, he says: "First, he must select or adopt some mark or sign not in use to distinguish goods of the same class or kind already on the market, belonging to another trader; second, he must apply his mark to some article of traffic, and third, he must put his article, marked with his mark, on the market." Now it is undisputed that this association has complied with the first two of these requirements; only in respect to the third has it failed. It did not itself put upon the market its own articles marked with the label. But it is doubtful whether the learned judge intended this third requisite to be so strictly read, for he immediately added: "Mere adoption of a mark or sign and a public declaration by advertisement or otherwise that a person will at a subsequent time put a particular thing on the market, marked or distinguished in a certain way, create no right. Until the thing is actually on the market, marked by the particular mark of the person intending to acquire a title, no property right in the mark arises." This seems to indicate that it was the actual marketing

of the marked article, and not the person by whom it was marketed or owned, on which stress was laid. And why should this specific personal element be deemed important? The public object sought in the protection of trade-marks is to bring upon the market a better class of commodities, and the means for attaining that object is by securing to those who are instrumental in supplying the market whatever reputation they gain by their efforts toward that end. The workman by whose handicraft the commodity is made is one of these instruments, just as is his employer who furnishes the raw material and owns and sells the finished product; and if the former is permitted by the owner to place upon the commodity a mark to indicate whose workmanship it is and thereby commend his workmanship to other employers, this license from the owner should be deemed a right against everybody else. His aptitude in his trade is his property, and if by a mark he can have it identified as his in the market, he may enhance its salable value and thus secure the same sort of advantage as his employer by similar means. No reason exists why this advantage should not be protected by the courts in the same manner and to the same extent as is the like advantage of the employer. The mere fact that one rather than the other of these persons has placed the product upon the market has no rational bearing upon the matter, for both alike have had the market in view in the efforts they have made and through those efforts the market is supplied.

A different objection to a suit of this nature was sustained in *Weener* v. *Brayton, 152 Mass. 101,* namely, that the label did not indicate by what persons the articles labeled were made, but only indicated that they were made by one of many persons who were not connected with each other in any business. The first clause of this objection would unduly restrict the law of trade-marks as everywhere recognized, for it is established that, whatever be the quality indicated by a trade-mark, the mark need not point out the particular person from whom that quality is derived. The law has placed no limit upon the number of persons who may unite for business purposes and jointly acquire property in a trade-mark, and yet it is evident that, if there be

Schmalz *v.* Wooley.

many, some of them may have no personal share in producing the article identified by the mark. The second clause in the objection assumes what does not appear to be true in the case before us. We understand from the bill that the members of the association represented by the complainant are connected together as journeymen hatters; that their skill in this trade and their mutual assistance in profiting by its practice form the motive and chief aim of their association. This connection is as clearly one for business purposes as is that of members in a partnership or of stockholders in a corporation. Although it is a comparatively novel species of relationship, it has become an established one, and therefore calls for the application of those general principles of law and equity which are applied to other species of business associations. According to these principles, we think a workman or a number of workmen engaged in the same branch of industry and banded together for their mutual profit in the pursuit of their common vocation, may acquire a right of property in a trade-mark designed to distinguish their workmanship from that of other persons, and that a trade-mark so owned is entitled to the same protection as other trade-marks.

The decree below should be reversed, and the demurrer overruled.

*For reversal*—COLLINS, DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH—12.

*For affirmance*—None.