[Sac. No. 2901. In Bank.—February 17, 1920.]

## MILLER AND LUX, INCORPORATED (a Corporation), Appellant, v. THE SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT, Respondent.

[1] DRAINAGE DISTRICTS—GENERAL ASSESSMENT LEVIED BY SACRAMENTO AND SAN JOAQUIN DISTRICT—VALIDITY.—In this proceeding contesting the validity of a general assessment levied by the Sacramento and San Joaquin Drainage District created by the legislature in 1913 (Stats. 1913, p. 252), the assessment is held valid, as being authorized by the statute, without first having segregated the general scheme of improvement into separate projects.

[2] WATERS AND WATER RIGHTS—FLOOD WATERS—COMMON LAW.—At common law flood waters were deemed a natural enemy of all, and each man had a right to protect his property as best he might against such waters, and damage to his neighbor by reason of the diversion of flood water was *damnum absque injuria*.

[3] DRAINAGE DISTRICTS — ASSESSMENT BY SACRAMENTO AND SAN JOAQUIN DISTRICT—INCLUSION OF RECLAIMED LAND—ASSESSMENT IN ACCORDANCE WITH BENEFITS—DANGER FROM FLOODS.—The general assessment levied by the Sacramento and San Joaquin Drainage District to cover the outlay necessary in the preparation of the plans for the segregation of the general scheme of improvement into separate projects is not subject to attack by a land owner whose lands were included within the district on the ground that the assessment was not made in accordance with benefits because his lands had already been reclaimed, where all of the lands within the district, both reclaimed and unreclaimed, were subject to danger from floods.

[4] ID.—GREATER AREA OF RECLAIMED LAND IN SACRAMENTO VALLEY—EVIDENCE—JUDICIAL NOTICE.—It is common knowledge, of which the courts will take judicial notice, that there are more reclamation projects and a greater area of reclaimed land requiring supervision and adjustment in the Sacramento Valley than in the San Joaquin Valley, and it was proper for the relamation board of the drainage district to consider such matter in determining the amount of the assessment of each region.

[5] ID.—ASSESSMENT REGARDLESS OF VALUE OF LANDS—VALIDITY.—In view of the fact that the general assessment levied by the Sacramento and San Joaquin Drainage District was for the general benefit of the whole area, the general scheme involving not only the reclamation of lands but protection from floods as well, the assessment is not subject to attack on the ground that all

lands, both improved and unimproved, were assessed at the same rate.

[6] ID.—FIXING BOUNDARIES OF ASSESSMENT DISTRICT—ACT OF LEGIS-LATURE—GENERAL RULE.—The general rule is that where the legislature has itself fixed the boundaries of a district to be assessed for the benefits of an improvement, the legislative determination is conclusive upon the courts, and precludes inquiry into the question as to whether or not the property within the district has been benefited.

[7] ID.—BENEFIT TO RECLAIMED LANDS—DETERMINATION OF LEGISLA-TURE CONCLUSIVE.—In view of the nature and character of the work contemplated by the legislature, of which the courts will take judicial notice, it cannot be said that there is anything so palpably arbitrary or grossly unequal in the inclusion of lands within the Sacramento and San Joaquin Drainage District which had already been reclaimed as would justify the interference of a court on the ground that a constitutional right of the property owner had been violated on the theory that his property would not be benefited by the improvement.

[8] ID.—EVIDENCE—LACK OF BENEFITS.—In a proceeding instituted by a land owner whose lands had already been reclaimed and which were included in the Sacramento and San Joaquin Drainage District to contest the validity of a general assessment, evidence offered for the purpose of proving that plaintiff's lands in certain counties would not be benefited by the project was properly excluded, since the inclusion of the lands by the legislature was conclusive on the subject.

[9] ID.—LACK OF MINING DEBRIS IN SAN JOAQUIN RIVER.—In such a proceeding, proof that there had not been and that there was no prospect of there being any mining debris in the San Joaquin River to be taken care of by the reclamation board was not sufficient to show that the lands of the plaintiff would not be benefited by the project, in view of the fact, of which the court will take judicial notice, that the debris from the mining regions in the tributaries of the Sacramento River, if carried in its waters, tends constantly to raise the level of the bottom of that river and decrease its capacity for carrying water, and as a consequence to increase the height of the flood level in the Sacramento and correspondingly elevate the flood level in the lower part of the San Joaquin River.

[10] ID.—LANDS ABOVE HIGHEST FLOOD LEVELS—EXCLUSION FROM ASSESSMENT—POWER OF LEGISLATURE.—A land owner whose re-claimed lands were included in the district cannot claim that it is inconsistent to hold that it is conclusively presumed that all the lands within the exterior boundaries of the whole district are benefited, and to sustain the assessment which excluded three hundred

thousand acres above the level of the highest floods, since the legislature included such lands to give the reclamation board power to protect such lands in case of unprecedented floods.

[11] Id.—Omission of Nonbenefited Lands — Validity of Assessment.—There is nothing in the Sacramento and San Joaquin Drainage District Act which requires the reclamation board to extend a general assessment over the entire district, and where the assessment is of no benefit to excluded lands, it cannot be attacked for their omission.

[12] Id.—Title of Amendatory Act of 1913—Reclamation of Land in San Joaquin Valley—Subject Included.—The title of the act of 1913 amending the act of 1911 is sufficiently broad to include the subject of reclamation of land in the San Joaquin Valley, although not mentioned in the title of the original act, in view of the fact that the title to the amendatory act mentioned the San Joaquin River.

[13] Statutory Construction — Subject Dealt With — Title of Amending Act—When Sufficient.—If the title of an amending act itself expresses the subject dealt with, it is sufficient independently of the original title.

APPEAL from a judgment of the Superior Court of Merced County. Wm. A. Beasly, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Edward F. Treadwell and Berkeley B. Blake for Appellant.

Sullivan & Sullivan & Theo. J. Roche for Respondent.

WILBUR, J.—This proceeding was instituted to contest the validity of general assessment No. 1 made by the defendant. The judgment affirmed the assessment. The defendant was created by the legislature in 1913 (Stats. 1913, p. 252). The district contains 1,735,533 acres of land, of which three hundred and sixty-seven thousand are situated in the valley of the San Joaquin River and the balance in the valley of the Sacramento River. By the assessment attacked herein five cents per acre was levied upon the land in the San Joaquin Valley and fifteen cents per acre upon the land in the Sacramento Valley. The general plan of improvement contemplated by the legislature and the necessity therefor are clearly set forth in the statement in *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373, [103 Pac. 207], and in *Gray*

v. *Reclamation Dist.*, 174 Cal. 622, [163 Pac. 1024], and in
the report of the California Debris Commission (Public
Documents No. 81, House of Representatives, 62d Congress),
a federal commission created by Congress in 1893 (27 Stats.
at Large, p. 507, [U. S. Comp. Stats., secs. 10004–10029;
6 Fed. Stats. Ann., 2d ed., pp. 623–627]), which report was
adopted by the legislature of California (Stats. Extra Sess.
1911, p. 117), and made the basis of the act creating the
defendant (Stats. 1913, p. 252); and by the supplemental
report No. 616 on flood control, submitted by Mr. Curry of
the committee of flood control and ordered printed April
29, 1916 (pp. 32, 61, 62, items 49, 51, 189, 197).   See, also,
report of chief of engineers of the United States army,
transmitted to Congress by Henry L. Stimson, the Secretary
of War, items 1, a, b, c, 2, 4, 5; Senate Joint Resolution No.
16, Session 1911, Stats. Extra Sess. 1911, p. 426; public re-
port of the California Debris Commission, dated February 8,
1913; Document No. 5, Sixty-second Congress, secs. 11 and
12.   It would unduly extend this opinion to quote exten-
sively from these reports and documents.   It is sufficient at
this time to state the general purposes of the formation of
the district in the language of sections 1 and 7 of the statute
as amended in 1913 (Stats. 1913, p. 253):

"Sec. 1. The report of the California Debris Commission,
. . . *with such modifications and amendments as may here-
after be adopted by the reclamation board,* is hereby ap-
proved as a plan for controlling the flood waters of the Sac-
ramento river and San Joaquin river and their tributaries,
for the improvement and preservation of navigation and the
reclamation and protection of the lands that are susceptible
to overflow from said rivers and their tributaries.

"Sec. 7. . . . The purposes and objects of this act are to
carry into effect the plans of the California Debris Commis-
sion for the control of the flood waters of the Sacramento
and San Joaquin rivers and their tributaries, and to vest in
said reclamation board control and jurisdiction over said
plans *and such other plans as may be adopted by said board,*
excepting such portions of said plans as relate to channel
excavation, enlargement, rectification and control in the Sac-
ramento river and the construction of weirs; it being the
intent of this act that all work and control in the said stream
and the construction of weirs shall remain with the United

States and the State of California, concurrently, but this exception does not apply to the San Joaquin river and its tributaries." (Italics ours.)

The United States government, through its California Debris Commission, and the state of California, acting through its legislature and through the reclamation board of the defendant and through the various reclamation districts and other public and *quasi*-public corporations organized for the purpose, are endeavoring to so control flood conditions in the two rivers as not only to reclaim swamp and overflowed lands, but to protect these comparatively level valleys from the effect of floods and to protect and increase the navigability of the Sacramento River, and the San Joaquin River as far as Stockton.

Appellant raises three objections to the validity of the assessment: First: That the assessment was unauthorized by the statute, for the reason that as a prerequisite thereto the board was required by the statute to have prepared proper plans for the reclamation of the land, and that no such plans were made. Second: That the assessment was not made in accordance with the benefits. Third: That the assessment was for purposes which in no way benefited the land of the plaintiff. The first two points deal with the validity of the assessment under the terms of the statute organizing the defendant. The last point involves the validity of that statute in so far as it authorizes, if it shall be found to so authorize, the levy of an assessment upon lands within the district regardless as to whether or not the lands were actually benefited; this question, in turn, involving rulings of the trial court in relation to the admissibility of evidence sought to be adduced by the appellant for the purpose of establishing that its lands were not benefited. In considering these questions it will be necessary to state further facts with regard to the assessment and its purposes. The assessment was for two hundred and fifty thousand dollars. In its resolution levying the assessment it is declared that fifty thousand dollars is for the reimbursement of one-half of the appropriation of one hundred thousand dollars made by the legislature for the use of the reclamation board by the act establishing it. Two hundred thousand dollars was for the purpose of paying "general administrative and engineering expenses of the reclamation board, not specifically pertaining

to any particular portion or project into which may be divided the plans to be carried out by said board, and including *per diem* and expenses of its assistants, employees, and advisors, office expenses, equipment, supplies, expenses of litigation, and expenses of the state engineer incurred by him under the direction of this board, and general and miscellaneous engineering expenses and any other expenses necessary to enable the reclamation board to carry out the objects and purposes of said act, and which do not specifically pertain to any particular portion or project into which may be divided the plans to be carried out by said board, as aforesaid. Also the expenses of levying, assessing, apportioning, reapportioning, defending, and collecting the assessment which is hereby levied.'' The assessment was levied upon all the lands within the district below the flood planes of the Sacramento and San Joaquin Rivers, and included all the land within the district, with the exception of three hundred thousand acres. The assessment was levied upon the theory that it was proper to charge this expense, which would relate to all subsequent plans and improvements, and the purpose of which was to consummate a general plan of reclamation, upon all the lands lying within the district which had been affected by floods, and the respondent predicates its statutory authority to levy such assessment upon the first provision in section 13 of the statute, which reads as follows: ''Whenever, in the opinion of said board, it shall be necessary to levy an assessment upon any lands within said drainage district for any of the purposes herein specified, said board shall cause an assessment to be levied upon the lands within said drainage district for such purposes. . . . Said assessors must assess upon the lands within said drainage district the said sums so estimated by the board, and shall apportion the same according to the benefits that will accrue to each tract of land in said district, respectively, by reason of the expenditure of said sums of money. After said assessors have examined the plan or plans of the works contemplated and the said estimates of the cost, they shall make a preliminary report to the reclamation board indicating the exterior boundaries of the lands that in their opinion will be benefited by the expenditures. . . . They shall exclude any land that will not be benefited by the expenditure of said sums and shall assess all lands that will be

CLXXXII Cal.—17

benefited thereby." After providing for hearings before the board with reference to the assessment, the statute provides: "Any person aggrieved by the decision of the board approving said assessment may commence an action against the district in the superior court of the county in which said land or the greater part thereof is situated, to have said assessment modified or annulled. Such action must be commenced within thirty days after the reclamation board has approved such assessment and shall have preference over all civil actions in fixing the time of trial. No objection to said assessment shall be considered by the court unless such objection shall have been made in writing to the reclamation board as hereinbefore prescribed, and, excepting in the action above mentioned, no action or defense shall ever be maintained attacking the said assessment in any respect." The appellant, in its objections before the reclamation board, and in this proceeding, in pursuance of the provisions of section 13, above quoted, claims that other portions of section 13 so far modify the general authority above quoted to levy assessments that the reclamation board must first provide the general scheme of reclamation in accordance with the provisions of the statute before being authorized to make any assessment whatsoever for benefits, and, while recognizing the necessity of preliminary surveys and other work to enable the reclamation board to intelligently subdivide the various reclamation projects, contends that the legislature contemplated that such expense should be made by general taxation, and that no authority is conferred upon the reclamation board to make such assessment. In section 13, after the first sentence above quoted, occur the provisions upon which the appellant relies: "The plans to be carried out shall be divided by said board into separate portions or projects in such manner as will in its judgment best facilitate the levying of assessments for each particular portion or project in a just and equitable manner according to benefits upon the lands in said district. Said board shall enter in the minutes of the board, a resolution to the effect that the execution of each such separate portion or project which they may determine upon is a public necessity. Each such particular portion or project shall be designated by the board in such resolution by name and number. All assessments, plans and funds intended for or connected with the execution of each

particular portion or project shall be designated by such name and number and shall be kept separate and shall be used only for the purpose of carrying out such particular portion or project.'' Then follow provisions for the appointment of three assessors, the assessment by such assessors upon lands within the district, apportioning the same ''according to the benefits that will accrue to each tract of land in said district, respectively, by reason of the expenditure of said sums of money. After said assessors have examined the plan or plans of the works contemplated and the said estimates of the cost, they shall make a preliminary report to the reclamation board indicating the exterior boundaries of the lands that in their opinion will be benefited by the expenditures.'' It was evidently the purpose of the legislature to provide for the segregation of this vast project into separate projects and to levy the expense of each project upon the particular district benefited thereby, to be determined by the assessors and the reclamation board, and the plan of assessment outlined in section 13 was evidently adopted with that in view. As appellant points out, it contemplates the adoption of plans for the particular work or project in hand, the inspection of those plans by the assessors with a view to determine the district to be benefited thereby, the establishment of the district in accordance with that finding, and the assessment of the cost of the particular plan upon the assessment district so established. Considered without reference to other provisions of the act, and in view of the fact that the mode of assessment is also the measure of the power of assessment, we might be constrained to hold that, notwithstanding the broad general purposes of the law, the legislation was defective by reason of the failure to provide a method of raising funds for the large general expenditures necessary for the comprehensive plan of improvement which was contemplated by and, indeed, the very purpose of the legislature in the act in question. We are now endeavoring to ascertain the scope of the power conferred by the legislature upon the reclamation board, and in doing so we must consider, not only the details of the method of assessment, but other provisions in the law bearing upon the power and authority of the reclamation board. The act contemplates the adoption of a comprehensive plan of improvement, the carrying out of surveys and investigations for the purpose of perfecting those plans, and appropriates one hundred

thousand dollars for the expenditures thus made necessary. The portion of the statute making this appropriation and providing for an assessment to reimburse the state is particularly significant in view of the contention now under consideration. By section 19 it is provided: ''The sum of one hundred thousand dollars, in addition to the sums heretofore appropriated, is hereby appropriated for the use of the reclamation board, at least twenty thousand dollars of which shall be used by the board to pay the expenses of the state engineer in carrying out the directions of this act. . . . *In the first assessment levied in said district the sum of fifty thousand dollars shall be levied, collected* and paid to the state treasurer *as reimbursement of one-half of the above appropriation.*

''The state of California shall not be liable, directly or indirectly, for any obligation, claim, or liability of any kind or character, arising under, or by reason of this act, or any of the provisions thereof, in excess of the one hundred thousand dollars in and by this act appropriated.'' (Italics ours.) It is apparent from this provision that the legislature contemplated that the expenditures involved in the preliminary work should be borne by the state to the extent of fifty thousand dollars and that fifty thousand dollars thereof should be levied upon the property in the district, and that the state contemplated no other responsibility, claim, or liability growing out of the activities of the reclamation board. Unless we assume that the legislature underestimated the expenditures necessary for the preliminary work of the reclamation board, it is clear that, in view of their purpose to pass an effective act which would enable the reclamation board to deal comprehensively with the whole problem before it, it was contemplated that any additional expenditures necessary in the preparation of the plans should be borne by the property within the district. If the reclamation board, instead of providing for additional surveys and information before segregating the general scheme into separate projects had made a more or less arbitrary segregation of the district into various subsidiary or assessment districts relating to the several projects, it would, no doubt, be conceded that the expense incidental to each piece of work would properly be assessable upon that district, and in this way the whole expense of survey and plan with the proper proportion of overhead ex-

penses could be apportioned to the several projects. Appellant's contention is, in effect, that this is the sole and only way in which such expenditures could properly be charged against the property. The almost conclusive answer to this contention is the provision of the act in question which requires "in the first assessment levied in said district the sum of fifty thousand dollars shall be levied . . . as reimbursement of one-half of the above appropriation." It is evident that the legislature contemplated an assessment spread over the entire district, or at least an assessment covering a large proportion of the district. Every contention that is raised by the appellant concerning lack of benefits and unfair distribution of the assessment would apply with greater emphasis if the board had adopted the plan contended for by the appellant and had charged to some comparatively unimportant improvement in a small district one-half of the initial outlay which had obviously been to the advantage of the entire district. If the entire one hundred thousand dollars had been expended in connection with the preliminary work for the Sacramento Valley, appellant could have contended with much greater force that the assessment was unjust and unconstitutional. If, instead of being spread over the entire district, covering both the Sacramento and the San Joaquin Valleys, it had been levied upon some project manifestly benefiting the lands only on some tributary of the San Joaquin River, even if the language of the statute justified the construction sought to be placed upon it by appellant, constitutional considerations requiring that the assessment should be in proportion to the benefits would constrain us to adopt the construction so obviously indicated by the provision requiring that fifty thousand dollars utilized for the general purposes of the board should be levied in the first assessment made in the district. This provision, as well as the general scope and purpose of the act, points to the conclusion which is definitely stated in the opening sentence of section 13, above quoted, that the reclamation board was authorized by the legislature to make an assessment upon the lands within the district to cover the outlay necessary in the preparation of the plans for the segregation of the general scheme of improvement into separate projects. The necessity of such expenditure and for such preliminary work is clearly pointed out by the court in its statement of facts

in *People* v. *Sacramento Drainage Dist., supra,* wherein it is stated (155 Cal. 380, [103 Pac. 211]): "In time two impending difficulties came to be perceived: 1. That, because of the great number of such small districts, each operated independently and under no general plan for the good of all, much money and labor were wasted. Since there was no common and harmonious plan of reclamation, one district frequently worked in antagonism to another; the operations or neglect of one district might tend to imperil the existence of another; while the extravagant use of money, made necessary because of the lack of concerted action, and because each district was obliged to fight not alone the common enemy—the water—but perhaps equally an adjoining district, put burdens upon many of the districts which soon became intolerable, with the result that the districts themselves were sometimes abandoned, and their works fell into disrepair and disuse. . . . Such being the situation, it was deemed expedient by the state to form one large district, to the end that the commissioners of such district might by exercising supervisorial control over the smaller districts, and by adopting one general plan of reclamation, economize in expenditures, save the extravagant waste of moneys which had been a part of their past history, and by general assessment over a large area materially lessen, perhaps, the burden which the land owners might otherwise be called upon to bear. These were the obvious reasons actuating the legislature in formulating the scheme in the act under consideration." [1] We conclude, then, that the statute authorized the levy of the assessment in question without first having segregated the general scheme into projects.

Next taking up the contention of the appellant that the assessment is not made in accordance with the benefits to be derived from the proposed expenditure. This contention is based in part upon the proposition that appellant's lands have already been reclaimed, are valuable agricultural lands requiring irrigation, and that much of the other land within the district is permanently flooded and overflowed, and that other land is subject to periodical overflow. The latter are of comparatively nominal value—ten dollars per acre—and obviously would be benefited to a vastly greater extent than the lands owned by the appellant when a plan of complete reclamation is finally executed. It is pointed out also that

most of the work already undertaken by the reclamation board has been in the Sacramento Valley, and that there is no way in which it can be said what benefit will accrue to the land within the district, for the reason that the nature of the plans contemplated cannot be known until after they have been perfected. It is, of course, conceded that the apportionment of the benefit is largely, if not exclusively, a question for the legislative branch of the government. But it is claimed that it is unfair to assess the cost of a reclamation project upon lands already reclaimed, or, at any rate, to make the burden equal upon such lands and upon lands not yet reclaimed. The testimony on this subject makes it clear that the assessment was based upon two fundamental considerations: First, that the board was dealing with the problem of flood control and that all lands subject to overflow were necessarily benefited by the formation of plans designed to diminish the danger of flood or to lower the flood plane; second, that it cannot be said that unreclaimed lands were exclusively benefited thereby, for the reason that the danger from flood is one common to all lands below the flood level, whether reclaimed or unreclaimed. [2] The justice of this view is manifest by the fact that at common law flood waters were deemed a natural enemy of all and that each man had a right to protect his property as best he might against such waters, and that damage to his neighbor by reason of the diversion of flood water is *damnum absque injuria*. (*Gray* v. *Reclamation District No. 1500*, 174 Cal. 622, [163 Pac. 1024].) [3] Without further discussion of the more or less difficult question of the control of flood waters, it is sufficient for the purposes of this case to say that the mere fact that appellant's land has been reclaimed does not justify the exclusion of this land from a general scheme of improvement looking to the diminishing of the danger of flood waters, since the plaintiff's lands are below the flood level and subject to such danger. Much of the flood control work to which a large portion of the time and attention of the reclamation board has been and will be directed concerns the larger and more difficult plans for flood control in the Sacramento Valley. It was this consideration which, no doubt, moved the reclamation board to place the larger tax upon the land in the Sacramento Valley. It must be manifest from these considera-

tions that neither the fact that a uniform levy of five cents per acre was made upon land in the San Joaquin Valley, nor the fact that the land of the appellant has been reclaimed, necessarily results in the conclusion that the assessment was not levied in accordance with benefits.

The assessment of the larger amount on the lands in the Sacramento Valley may be explained from the fact that floods come more frequently and often in greater volume there than in the San Joaquin Valley. [4] It is common knowledge, of which we take judicial notice, that in the part of the Sacramento Valley included in the assessment district there are more reclamation projects and a greater area of reclaimed land requiring supervision and adjustment than there are in the San Joaquin Valley. All this was proper matter for the board to consider in determining the amount of the assessment of each region, and it cannot be said as a matter of law that their decision is contrary to the facts.

[5] With respect to the assessment of all lands, improved or unimproved, at the same rate it is sufficient to say that a general assessment of this character has no direct relation to the value of the lands assessed. The assessment is made because of the general benefit to the whole area. The general scheme involves not only the reclamation of lands but protection from floods as well. It designed also the lowering of the flood plane by the creation of better outlets for the escape of water, so that lands under the flood plane would be overflowed less frequently when the entire scheme is complete than has been the case before. Doubtless the greater part of these expenses would have been necessary if no reclamation work had been done and the entire area below the flood level had been unimproved. These and other considerations may have entered into the reasons which induced the board to levy the assessment upon lands regardless of value. The court cannot say that it was unfair or unjust and that the assessment was not in proportion to the benefits derived from the general work of the board. Indeed, it is doubtful if a more fair and just method of assessment could have been devised. Appellant suggests no better plan.

The third contention of appellant, "That the assessment was for purposes which in no way benefited the land of appellant," involves two distinct propositions: First, the constitutionality of the statute in so far as it includes the land

of appellant within the improvement district; and, second, the validity of the particular assessment under consideration. In support of its contention that the statute is unconstitutional appellant offered evidence to prove that its property would not be benefited by any work authorized to be done by the statute or its amendments, and made numerous special offers directed to this general point. [6] The general rule is that where the legislature has itself fixed the boundaries of a district to be assessed for the benefits of an improvement, the legislative determination is conclusive upon the courts and precludes inquiry into the question as to whether or not the property within the district has been benefited. (*Los Angeles County Flood Control Dist.* v. *Hamilton*, 177 Cal. 119, [169 Pac. 1028], and cases therein cited.) Appellant, however, relies upon *Myles Salt Co.* v. *Board of Commissioners of the Iberia etc. Drainage District*, 239 U. S. 478, [L. R. A. 1918E, 190, 60 L. Ed. 392, 36 Sup. Ct. Rep. 204]; *Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24, [L. R. A. 1918E, 197, 148 Pac. 417]; and *Norwood* v. *Baker*, 172 U. S. 269, [43 L. Ed. 443, 19 Sup. Ct. Rep. 187, see, also, Rose's U. S. Notes], to overcome the general rule in this particular case. These cases were so exceptional in their facts, that thereunder the effect of the tax was to confiscate property without due process of law. Notwithstanding the contention of the appellant that this case is a parallel one with them, it is sufficient to say that there is no allegation made nor proof offered to bring the case within the exceptional decisions mentioned. On the contrary, it comes clearly within the general rule which has been recently restated by the supreme court of the United States in *St. Mary's Cemetery Assn.* v. *Mullins*, 248 U. S. 501, [63 L. Ed. 383, 39 Sup. Ct. Rep. 173], where it was said: "This court has more than once declared that it does not interfere with the taxation and assessment laws of the states as violative of the fourteenth amendment *unless the state's action has been palpably arbitrary or grossly unequal in its application to the persons concerned.*" (Italics ours.) [7] In view of the nature and character of the work contemplated by the legislature, of which we take judicial notice, it cannot be said that there is anything so "palpably arbitrary or grossly unequal" in the inclusion of appellant's lands within the respondent district as would justify the

interference of a court on the ground that a constitutional right of the appellant has been violated. The inclusion by the legislature of the appellant's lands within the respondent drainage district is therefore conclusive upon the courts and precludes inquiry as to whether or not the lands in question are benefited by the general legislative scheme. **[8]** There was, therefore, no error in excluding the evidence which was offered for the purpose of proving that the lands in Fresno, Madera, Merced, and Stanislaus Counties would not be benefited by the *general* scheme of improvement proposed by the statute under which the respondent was organized, for the reason that the inclusion of appellant's lands within the exterior boundaries of the district by the act of the legislature is conclusive on that subject. (*Los Angeles County Flood Control Dist.* v. *Hamilton, supra.*) It is obvious that the offer to prove that the lands of the plaintiff within the district would not be benefited by the carrying out of the work and plans contemplated by the act and described therein by reference to the report aforesaid is nothing less than an offer to disprove a fact which it must be presumed the legislature determined conclusively before passing the act. No objection going to the general benefits of the entire scheme to all the land included within the area of the drainage district as defined by the act can be considered by the courts, and evidence going to sustain the same cannot be admitted.

**[9]** The plaintiff offered proof that there has not been and that there was no prospect of there ever being any mining debris in the San Joaquin River to be taken care of by the reclamation board. Such proof would not, even if admitted, be sufficient to show that the lands of the plaintiff will not be benefited by the overhead expenses of the part of the general scheme under way, for which this assessment was levied. Facts of which the court will take judicial notice demonstrate that evidence to that effect would not have established the fact to which it was to be addressed, namely, that the lands will not be benefited. The extreme flood waters of the two rivers when both are in flood meet in opposite directions in the delta region lying to the west of Stockton. When the Sacramento River flood is higher than that in the San Joaquin, the effect is to obstruct the flow of the latter and force it back to the south up the river so as to increase the height of the flood plane in the San

Joaquin Valley. It is a matter of common knowledge that the debris from the mining regions in the tributaries of the Sacramento, if carried in its waters, tends constantly to raise the level of the bottom of that river and so to decrease its capacity for carrying water. The consequence would be that it would increase the height of the flood level in the Sacramento River and correspondingly elevate the flood level in the lower part of the San Joaquin River, under the conditions above described. Consequently, the fact that there may be no mining debris coming down into the San Joaquin River would not show that the prevention of mining debris in the Sacramento River, or the disposal of it without diminishing its flood capacity, would not be beneficial to lands situated in the part of the flood area usually covered by the waters of the San Joaquin River. This objection to the evidence was properly overruled. Section 13 of the act of 1913 (Stats. 1913, p. 252) authorizes the court to determine the question as to whether or not the assessment should be "modified or annulled," because unequal or unjust or not in proportion to benefits, and provides, in effect, that while the assessment therein levied shall be conclusive in every other action, in this action it is not conclusive as to the assessment of benefits. (See, also, sec. 3493½, Pol. Code, added in 1893; sec. 3462, added in 1911; *Reclamation District No. 673* v. *Diepenbrock,* 168 Cal. 577, [143 Pac. 763]; *Spurrier and Krohn* v. *Reclamation District No. 17,* 172 Cal. 157, [155 Pac. 840]; *Meyer* v. *Reclamation District No. 17,* 172 Cal. 104, [155 Pac. 635].) The appellant presented such evidence and was not precluded from presenting any evidence that bore on the question of benefits, if any, to be derived from the work contemplated by the particular levy under consideration. Upon the evidence the trial court found against the contentions of the appellant as to the assessment and affirmed the same. The decision is supported both by evidence and by facts of which this court takes judicial notice, as hereinbefore stated.

[10] Appellant claims that it is inconsistent to hold that it is conclusively presumed that all the lands within the exterior boundaries of the whole district are benefited by the plan of improvement contemplated by the legislature, and to sustain an assessment upon a district which excludes three hundred thousand acres of such lands. The legisla-

ture, however, clearly contemplated that in order to accomplish the purposes designed, it would be necessary to organize a number of reclamation districts and to construct a number of reclamation improvements for which separate local assessments would be necessary, each separate and distinct from others of like character, all to be included within the exterior boundaries of the entire district, and that the administration of the whole project, including the determination of the separate reclamations and the boundaries of the separate assessment districts that would be rendered necessary by reason thereof, was to be placed under the control of the reclamation board. It is obvious that a considerable sum of money would be necessary for overhead expenses in making the surveys and investigations necessary to determine the location of the several projects and the character of the reclamations to be made in each one, and that these general expenses could not be said to be for the benefit of any particular local reclamation or district or project, but would redound generally to the benefit of all the property within the exterior bounds of the whole district found by the reclamation board to be benefited in general by the several distinct reclamations and projects under consideration at the time of the levy of the assessment for such general expenses. In view of the fact that it is apparent from the act of the reclamation board that they considered that the various plans of reclamation under consideration would be beneficial only to lands below the flood plane of the two rivers, it is clearly within their power to limit the assessment district for such general and overhead expenses to the lands whose improvements were contemplated by the proposed plan. It is evident that at some future time other improvements contemplated by the board may include the improvement of the land now above the known flood plane of the two rivers.

There are other facts which also must be considered in construing and applying the act and in determining what areas must be included in any particular assessment for general expenses. The rainfall in the Sacramento watershed is usually more than that in the San Joaquin and the floods occur there more frequently. The rainfall in the several tributaries of the two rivers often varies greatly during the same flood. The greater part of the flood water comes some-

times from one tributary, sometimes from another, and sometimes from several of them which are simultaneously at an equal flood stage. It is the latter condition that causes the highest floods. The level of the highest floods that have occurred since the acquisition of California by the United States is approximately known. The area covered by the assessment in question includes all the lands in the district below that level. The three hundred thousand acres excluded lie above it. But the future possibilities of floods are unknown. It is possible that at some time in the future more of the tributaries of the two rivers will simultaneously be at the highest flood level, or that all of them will be so, thus causing a higher flood than has been heretofore known —one which might cover the excluded area. The legislature, it must be presumed, recognized this possibility and provided against it by including within the district the lands above the known flood level, so that if the necessity should arise, the reclamation board would have the authority and power to devise and provide means for the protection of those lands, thus, in effect, declaring that in such a case those higher lands would receive benefit from the establishment of the district and be subject to assessment made for their protection.

[11] There is nothing in the act which required the reclamation board to extend over the entire district a general assessment to meet the present needs. The possibility of floods materially higher than the present known level is at best remote, and while it may have been prudent for the legislature to provide for it to some extent, it was not incumbent upon the reclamation board to make plans covering such higher lands or provide for any works, flood channels, levees, or reclamations for the benefit thereof. It is obvious that the board did not do so. The present overhead expenses are necessary only for the purpose of paying the general expenses appertaining to the several reclamations, alterations in the channels and means of control existing, determined upon, or approved, designed for the benefit and protection of the lands below the known flood plane. They are not exclusively for the benefit of existing reclamations for which local assessment districts have been formed. They are also for the benefit of all local or general improvements and works affecting all or any of the lands below the flood level, some of which

lands may not be included in existing local assessment districts. Hence the board may have concluded that such expenses could not justly be apportioned to existing local districts. And even if all had been included, inasmuch as the act does not forbid it, the general power to "levy an assessment upon any lands within the drainage district" includes power to make one assessment for such expenses against all the lands benefited, instead of apportioning the amount for separate assessment by the local district. As this general expense would be of no benefit whatever to the three hundred thousand acres excluded, we think this is a sufficient answer to the contention that the levy should have extended over the entire district. The reclamation board having fixed the boundaries of the assessment district so as to exclude three hundred thousand acres of land within the exterior boundaries of the whole district, and the trial court having received evidence as to whether or not the lands of the appellant were benefited by the contemplated expenditure, and having decided that it was so benefited, we cannot review the action of the reclamation board in excluding the three hundred thousand acres, if, as we hold, they had jurisdiction to fix the limits of the district benefited.

[12] It will be necessary to determine a point raised by the appellant in its brief filed after oral argument. Up to the time of the oral argument the appellant had conceded that the general scheme contemplated by the legislature included the reclamation of land along the San Joaquin River. But in its closing brief, after oral argument, appellant expresses a doubt as to whether or not the law authorizes such an improvement, and if it does authorize such an improvement it is claimed that the provisions authorizing the improvement are unconstitutional. The violation of the constitution thus complained of is that in the enactment of the amendments to the law of 1911, the provisions for the reclamation of lands in the San Joaquin Valley were incorporated in the original act whose title contemplated no such improvement. In other words, that the title of the amendatory act was not sufficiently broad to include the subject treated of in the amendment so far as it related to lands in the San Joaquin Valley. (Const., art. IV, sec. 24.) The argument advanced is as follows: "Anyone reading the title of the act of 1913, and knowing that it was but an amendment to the act of

1911 would conclude that it had to do with the reclamation of the territory along the Sacramento and San Joaquin Rivers covered by the report of the California Debris Commission. It may be true that if this act was not in the form of an amendment to an earlier act, the title would be broad enough to include reclamation in the upper San Joaquin Valley, but the rule is well settled that, although all of these matters might be included in one act, still if the title of the act is but to amend an act much more limited in its character, the amendatory act cannot be by such a title extended to an entirely new proposition." The title of the act of 1913 is as follows:

"An act to amend an act entitled 'An act approving the report of the California debris commission transmitted to the speaker of the house of representatives by the secretary of war on June 27, 1911, directing the approval of plans of reclamation along the Sacramento river or its tributaries or upon the swamp lands adjacent to said river, directing the state engineer to procure data and make surveys and examinations for the purpose of perfecting the plans contained in said report of the California debris commission and to make report thereof, making an appropriation to pay the expenses of such examinations and surveys, and creating a reclamation board and defining its powers,' approved December, 24th, 1911; by amending sections one, three and four of said act, and adding sixteen new sections to said act to be designated as sections five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, sixteen and one-half, seventeen, eighteen and nineteen; creating a drainage district to be known as Sacramento and San Joaquin drainage district, appointing of a reclamation board, providing for the management and control of said district and defining the powers and duties of the reclamation board and the state engineer, the acquisition of rights of way and property by said drainage district, the reclamation and protection of the lands therein which are subject to overflow from the Sacramento and San Joaquin rivers and their tributaries and control of the floods thereof; the making of assessments; also defining the rights and powers of certain municipal corporations, levee, drainage and protection districts therein, and making an appropriation to pay the expenses of the state engineer and the reclamation board; also providing for the approval and crea-

tion of plans of reclamation, and the examination of the security afforded to bonds of reclamation and drainage districts and others; to prevent the diversion of the waters of any stream into the Sacramento and San Joaquin rivers; to prevent the construction of and to require the removal or regulation of obstructions in streams, by-passes and overflow channels; to repay money contributed for the purchase of rights of way for enlargement of the outlet of the Sacramento river and making an appropriation for carrying out the purposes of this act." (Stats. 1913, p. 252.)

Appellant concedes that the title to this act is broad enough to include the subject of reclamation of land in the San Joaquin Valley were it not for the fact that the act in its title is styled "An act to amend an act entitled 'An act,' etc., 'approved December 24th, 1911.'" There is, we think, no merit in the suggestion that the legislature could have been misled by the title of the act of 1913 into believing that no subject was dealt with other than that covered by the original act. The scope of the legislation is clearly indicated by the title, and the fact that it was framed in the form of an amendment to a statute of more limited scope is of no consequence in determining whether the title to the act of 1913 complied with the constitutional requirement that the subject of legislation "shall be expressed in its title" (Const., art. IV, sec. 24), particularly where a most casual inspection of the title shows the clear intention to broaden the scope of the original title. **[13]** "If the title of the amending act itself expresses the subject dealt with, it is sufficient independently of the original title." (26 Am. & Eng. Ency. of Law, 594; *Schmalz* v. *Wooley*, 57 N. J. Eq. 303, [73 Am. St. Rep. 637, 43 L. R. A. 86, 41 Atl. 939].)

Judgment affirmed.

Angellotti, C. J., Olney, J., Shaw, J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.