[No. 8952.    Department One.    January 17, 1911.]

ELLA J. BOOK *et al.*, *Appellants*, v. GEORGE H. THOMAS *et al.*,
*Respondents.*[1]

PUBLIC LANDS—TIDE LANDS—PREFERENCE RIGHT TO PURCHASE—
ABUTTERS—HOLDER OF LEGAL TITLE.  The statute giving to the owner
of uplands the preference right to purchase abutting tide lands
from the state for the period of sixty days after the filing of the
tide lands plat, has reference to the owner of the legal title to the
uplands during the sixty days when the right must be exercised;
and confers no rights upon a vendee in possession under a contract
of sale with deed in escrow, who did not acquire legal title by full
payment of the price and delivery of the deed until nine months
after the tide lands plat was filed.

SAME—CONTRACT OF SALE—RESERVATION—CONSTRUCTION.  It will
not be inferred that a vendor of uplands retaining legal title, in-
tended to assign his preference right to purchase tide lands prior
to parting with his title, by reason of the reservation in his con-
tract of the mutual use of a dock situated on the tide lands; since
the reservation shows either that it was thought that the dock
was partly on the upland, or that it might pass as an appurtenance
unless reserved.

SAME—TITLE—WHEN PASSES—RELATION—DEEDS—DELIVERY —ES-
CROW.  Where the vendor of uplands under contract of sale executed
and placed in escrow a deed, the delivery of the deed cannot be held
to relate back to the time of the delivery in escrow, so as to work an
assignment of the vendor's preference right to purchase tide lands
as owner of the legal title prior to final payment and final delivery
of the deed.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Chehalis
county, Irwin, J., entered April 30, 1910, upon findings in
favor of the defendants, upon appeal from an award of the
state board of land commissioners, in a contest over the prefer-
ence right to purchase tide lands.   Reversed.

*G. C. Israel,* for appellants.

*John C. Hogan* and *Blaine, Tucker & Hyland,* for re-
spondents.

[1]Reported in 112 Pac. 917.

Gose, J.—On the 16th day of February, 1907, the plat of the Aberdeen tide lands was filed in the office of the commissioner of public lands. On March 23 following, the appellant Ella J. Book filed in the same office an application to purchase all the tide lands involved in this action. On April 13 following, the respondents Thomas filed their application to purchase the same tide lands. After hearing on the merits, the board of state land commissioners awarded the preference right to purchase to the appellants. Upon appeal to the superior court, this judgment was reversed, and the preference right to purchase was awarded to the respondents Thomas. The Books have appealed.

The material facts upon which the respective preference rights are asserted are as follows: On the 6th day of December, 1902, the appellants Book were the owners of about nine hundred acres of upland lying along the Chehalis river where the tide ebbs and flows, and in and adjoining the city of Aberdeen. On that day they entered into a written contract with one Coughlin, whereby they agreed to sell and convey to him an undivided one-half of the land, for a consideration of $12,500, of which $5,000 was then paid. The balance of the purchase price, with interest, was to be paid on or before November 29, 1907. On the same day they entered into a similar contract with one Gregory, by the terms of which they agreed to sell to him an undivided one-fourth of the land for $1,000, to be paid on November 29, 1907. If the final payment was made on the Coughlin contract at the time agreed upon, Gregory was to receive a deed without further payment. The one-fourth interest in the land evidenced by his contract was to be conveyed to him in payment of his commission for effecting the sale to Coughlin, but only upon the fulfillment of the contract by the latter. Time was made of the essence of each of the contracts, and Coughlin and Gregory took possession of the property.

On the 18th day of March, 1905, Gregory conveyed his interest in the land to the respondent Lizzie G. Thomas, by

a deed of quitclaim.   On the 4th day of May following,
Coughlin and his wife assigned their contract to the same
party.   The respondents Thomas then entered into and con-
tinued in the possession of the land.   On December 6, 1905,
the appellants Book and the respondents Thomas entered
into a provisional agreement, dividing the land and provid-
ing the part or portion which each thereof should have, and
stipulating that the property should be conveyed by a war-
ranty deed, that the abstract should show a clear title, and
that the conveyance should be made "upon payment by said
second party [meaning the respondents Thomas] to the said
first parties [the appellants] of the balance due under the
Coughlin contract," and that "nothing in this agreement
shall be construed as abrogating or modifying the Coughlin
or Gregory contracts relating to said ranch, held by the
parties of the second part, and said contracts shall remain
in full force and effect, and when this agreement is fully per-
formed by both of the parties hereto and the mutual con-
veyances herein provided for made, said Coughlin and
Gregory contracts shall be cancelled."   On the 18th day of
May, 1906, the appellants executed a warranty deed in favor
of respondents Thomas, and placed it in escrow.   This deed
embraced the property which the provisional agreement be-
tween the same parties stipulated should be conveyed to them.
In November, 1907, and before the 29th day of the month,
final payment was made as required by the Coughlin and
Gregory contracts, and the escrow deed was delivered.   It
conveyed certain upland, and the habendum clause contained
the language:   "To have and to hold the said premises, to-
gether with the tenements and appurtenances, unto the said
party of the second part," etc.   The trial court found that,
in entering into the provisional partition agreement, the
parties took into consideration the tide lands in front of the
property, and that it was their intention to acquire the tide
lands in front of the uplands, respectively assigned to them.

39—61 WASH.

This finding was made effective by the decree, and its correctness is challenged by the appeal. Whether it is correct, is the pivotal question in the case. It must be kept in mind that all the contracts are in writing. We must, therefore, look to the instruments themselves to get the intention of the parties.

The respondents insist that language may be found in both the provisional agreement and the deed to support the finding. The former provides, among other things, "Also that said parties shall have the mutual enjoyment of the dock now upon said ranch." The deed provides: "There is further reserved by the said first parties the right to the mutual use and enjoyment with the parties of the second part, their grantees or assigns, of that certain dock or wharf now situated upon the lands herein conveyed," with the right of ingress and egress. The court found, and we find nothing in the record to contradict it, that the dock or wharf was situate wholly upon the tide lands in front of the uplands described in the deed. A reference to the dates already stated will disclose that the respondents did not become the owners of the *legal title* to any part of the uplands, until long after the sixty days expired for the exercise of the preference right given by the statute, nor did they become the owners of any thereof until after the appeal had been taken from the order of the board of state land commissioners.

The argument of the respondents that the agreement and deed operate as an express and intentional assignment of the preference right to purchase the tide lands in front of the uplands, set apart and conveyed to them by these instruments, cannot be upheld. Nor is the argument that such right passed as an incident to the upland based upon any securer foundation. We think this court is committed to the view that the statute, giving the preference right to purchase tide lands to the owner of the abutting uplands, means the owner of the legal title during the sixty days when such right must be exercised.

In *Hays v. Merchants' Bank of Port Townsend*, 10 Wash.
573, 39 Pac. 98, it was held that one who had acquired the
legal title to the upland through a sheriff's deed, before the
hearing was had before the board of state land commissioners
to determine who had the preference right to purchase the
tide lands, but who only had a sheriff's certificate of sale until
some months after he had filed his application to purchase,
was not the owner within the meaning of the statute.     In
passing upon the conflicting claims, the court said:

"And it would be altogether unjust to allow a contestant
who has no present right to contest to go into the land-office
and file a claim based on no title in himself, and after months
of delay beyond the time permitted for the filing of contests,
give him the land upon the basis of some after-acquired title.
Moreover, we do not think it was the intention of the legisla-
ture that these applications for purchase of tide lands, by
shore owners, should be based upon anything but legal title.
The board is not a court of equity, and it is not constituted
for the adjudication of either equitable or inchoate rights.
It must be satisfied of course, that ownership exists, but it
takes things as they are at the time of application and within
the time allowed for contest."

It is said, however, that there is such a difference between
a judicial sale and a sale arising out of an express contract,
that the *Hays* case may be distinguished upon that ground.
The vice of this view is that the *Hays* case is not put upon
that ground, but upon the ground that the statute only ap-
plies to the holder of the legal title at the time the right is
sought to be exercised.    In *Book v. West*, 29 Wash. 70, 69
Pac. 630, the owner of the upland mortgaged it, "together
with all and singular the appurtenances and tenements now
or hereafter belonging."    The title to the tide lands was then
in the state.    The upland owner had erected upon the tide
lands a wharf and building, which projected a short distance
onto the upland and was in the possession of the same when
the mortgage was executed.    The contention that the mort-
gage embraced such right, title and possession as the mort-

gagor had in the tide lands and the improvements thereon, was rejected. In *Gifford v. Horton*, 54 Wash. 595, 103 Pac. 988, it was held that the preference right given to the upland owner to purchase tide lands is not a right of property, but a mere gratuity; and in *State ex rel. Wilson v. Grays Harbor & Puget Sound R. Co.*, 60 Wash. 32, 110 Pac. 676, we held that such right is not a vested right against the state prior to purchase.

The respondents cite *Seattle & M. R. Co. v Carraher*, 21 Wash. 491, 58 Pac. 570, and *Hotchkin v. Bussell*, 46 Wash. 7, 89 Pac. 183. Neither of these cases affords them any aid. In the *Carraher* case, it was held that the grantee of the uplands had the preference right to purchase the tide lands as against one claiming under a later conveyance of the tide lands by the same grantor. In the *Hotchkin* case, it was held that a preference right to purchase tide lands may be abandoned or assigned, and that it will descend to the heirs upon the death of the ancestor in whom the right exists. All the contracts have reference to uplands. Had it been the intention of the parties in the partition agreement that each should have the preference right to purchase the tide lands in front of their respective uplands, without regard to who held the legal title when the right was to be exercised, it seems that they would have so provided in direct terms. The intention could have been expressed in a few words. Before this contract was executed, it had been held in the *Hotchkin* case that the right was assignable. We will not infer the intention to assign the right, from the reservation of the mutual use of the dock. The language of the reservation in the deed shows, either that the dock was then thought to be wholly or in part upon the upland, or that being used in connection with the upland, it was thought that it might pass as an appurtenance unless some reservation was made.

Respondents' contention, that it can invoke the equitable doctrine of relation, we think is without merit. They cite *Cummings v. Newell*, 86 Minn. 130, 90 N. W. 311; *Krakow*

*v. Wille*, 125 Wis. 284, 103 N. W. 1121; *Scott v. Sloan*, 72 Kan. 545, 84 Pac. 117, and *Thoraldson v. Hatch*, 87 Minn. 168, 91 N. W. 467. In the *Cummings* case, the owner of a tract of farm land entered into a contract with another to sell him the land, received a payment upon it, executed a deed, and placed it in escrow. Pending the perfecting of the title, the crop was harvested and appropriated by the vendor. In a suit to recover for the value of the crop, it was held that the actual delivery of the deed must be construed as having taken place by relation at the time of its execution, and that the purchaser was entitled to recover. In the *Krakow* case, the owner of the land agreed to convey it to another, upon his making certain payments. The contract provided that the purchaser should have possession of the property. Later the land was regularly conveyed. Between the date of the contract and the execution of the deed, the owner cut and converted into lumber and cord wood a large number of trees which had been standing and growing on the premises, and sold the product and appropriated the proceeds. Applying the doctrine of relation, it was held that the vendor was liable to the purchaser in an action for conversion. The *Scott* case arose out of a transaction identical with that in the *Cummings* case, and it was held that the purchaser was entitled to the rents. In the *Thoraldson* case, it was held that, when a deed is placed in escrow, the title does not pass until the second delivery; but that "this rule is not inflexible, and does not apply where justice and necessity require a resort to fiction. In such cases the deed takes effect by relation from the first delivery, in order that the operation of the deed may not be frustrated by events transpiring between the first and second delivery." In the *Cummings, Krakow*, and *Scott* cases, it will be observed that the doctrine of relation was applied so as to protect a right in or arising out of the subject-matter of the contract.

We do not think the case at bar calls for the application of equitable principles. Tide lands, under our former holdings,

are neither a part of, nor an appurtenance to, the uplands. The owner of the legal title to the uplands, at the time when the right must be exercised, is by the grace of the state given the preference right to purchase. The respondents contracted for the purchase of the uplands, and have received all they contracted for. They did not acquire the legal title to the uplands until more than nine months had expired after the filing of the plat of the tide lands. We have not overlooked the oral testimony. The contracts, however, are unambiguous, and the intention of the parties must be ascertained from them.

The judgment is reversed, with directions to affirm the order of the board of state land commissioners.

RUDKIN, MOUNT, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—I think the judgment of the trial court should be affirmed. I therefore dissent from the judgment directed by the majority.