[Sac. No. 3346.    In Bank.—July 11, 1922.]

MILLER & LUX, INCORPORATED (a Corporation),
Appellant, v. THE BOARD OF SUPERVISORS, etc.,
et al., Respondents.

[1] IRRIGATION DISTRICTS—DIRECT ATTACK UPON DE JURE EXISTENCE
—EFFECT OF SUBSEQUENT PROCEEDINGS.—Proceedings to enjoin the
improper use of funds of an irrigation district and to compel an
inspection of its records are not such an admission of its exist-
ence as to preclude the prosecution of an appeal involving the
question of its *de jure* existence in a direct attack by a review of
the validity of the order of the board of supervisors fixing the
boundaries and ordering an election to determine whether the dis-
trict should be incorporated.

[2] ID.—INQUIRY INTO VALIDITY OF ORGANIZATION—WRIT OF REVIEW.—
Inquiry into the validity of the formation of an irrigation district
and into the order of the board of supervisors declaring its or-

ganization is not limited to a *quo warranto* proceeding, notwith-standing the provisions of section 4 of the California Irrigation Act, as amended in 1911, so providing (Stats. Ex. Sess. 1911, p. 139), since the jurisdiction of courts of record to entertain writs of review is given by the constitution and cannot be taken away by the legislature.

[3] ID.—ESTABLISHMENT OF BOUNDARIES OF ASSESSMENT DISTRICT—ACT OF LEGISLATURE—PRESUMPTION AS TO BENEFITS.—Where the legislature establishes the boundary of an assessment district it is assumed that it took such evidence and made such inquiry as was necessary in order to determine whether or not the property included in the assessment district would be benefited, and its action in establishing the district is conclusive on the courts.

[4] ID. — ESTABLISHMENT BY SUPERVISORS — HEARING OF PROPERTY OWNERS.—Where the fixing of the boundaries of the district to be taxed is left to some commission or to the board of supervisors it is essential that property owners whose property is to be taxed shall be given a hearing upon the question as to whether or not their lands would be benefited by the proposed improvement, and also a hearing upon the amount of the assessment to be charged against the property.

[5] ID.—OBJECTIONS BY PROPERTY OWNER—TIME—CONSTITUTIONAL LAW.—In view of the fact that under the California Irrigation District Act the only opportunity given the property owner to oppose the inclusion of his lands within the district is at the hearing before the board of supervisors at the time noticed for the hearing upon the petition for the formation of the district, any denial of such right by the supervisors or any statutory provision purporting to make the order of the board conclusive upon the property owner without such hearing having been in fact had is violative of both state and federal constitutions.

[6] JUDGMENTS—DECISIONS OF UNITED STATES SUPREME COURT—EFFECT OF.—The supreme court is bound by the decisions of the United States supreme court upon the interpretation of the federal constitution.

[7] IRRIGATION DISTRICTS—PROCEDURE FOR FORMATION—POWER OF LEGISLATURE.—The legislature has the power to authorize the formation of an irrigation district without any preliminary petition whatever, and also to determine the nature and character of the petition, if one is required, without regard to the property owners of the proposed district.

[8] ID.—NATURE OF DISTRICT—NOTICE OF FORMATION.—An irrigation district organized under the California Irrigation Act is an assessment district created for the primary purpose of assessing upon private lands the benefits to be derived thereby from the public improvements for the purpose the district is formed, and is such

a district as can only be properly formed by notice to the property owners at some stage of the proceedings of the inclusion of their lands within the district and by giving them a hearing before some tribunal having power to decide the matter, to advance and, if possible, sustain their contention that their lands would not be benefited by the proposed improvement.

[9] ID.—ORDER OF BOARD OF SUPERVISORS—COLLATERAL ATTACK.— Where proper notice has been given to an owner of land in a proposed irrigation district of the hearing as to whether his lands would be benefited by the proposed plan of improvement, and he is actually present *at* the time of hearing and presents his objections, but declines to introduce evidence upon the theory that the burden of proof is upon the board of supervisors to establish the irrigability of his land and the benefit of the proposed plan, the decision of the board is conclusive upon a collateral attack.

[10] CERTIORARI—FUNCTION OF WRIT.—The function of a writ of review is to bring before the court for consideration the proceedings before the inferior tribunal, including the evidence, and the proceeding is not a proper one in which to contest the truth as to jurisdictional facts.

[11] ID.—REVIEW OF ORDER OF SUPERVISORS—FORMATION OF IRRIGATION DISTRICT—RECORD—SUFFICIENCY OF COMPLAINT.—In a proceeding in *certiorari* to annul an order of a board of supervisors approving a petition for the formation of an irrigation district and calling an election for the establishment thereof, if any showing whatever is made in support of the action of the board by report of the state engineer as required by law, or otherwise, the court is bound by the facts stated in the complaint.

[12] ID.—JURISDICTIONAL FACTS—WANT OF EVIDENCE—ANNULMENT OF ORDER.—Under review proceedings, the courts will inquire into the question as to whether or not there was any evidence whatever to prove the jurisdictional facts, and in the absence of such evidence, the order under review will be annulled.

[13] ID.—PROCEEDINGS OF SUPERVISORS—DETERMINATION OF JURISDICTIONAL FACTS—EVIDENCE.—Under sections 1 and 2 of the California Irrigation Act, as amended in 1919 (Stats. 1919, pp. 714, 715), the report of the state engineer, and the certificate of acknowledgment or affidavit of the genuineness of the signatures and the residences of the signers of the petition can be considered by the board of supervisors in reaching its conclusion upon the jurisdictional facts.

[14] IRRIGATION DISTRICTS—CURATIVE PROVISIONS OF CALIFORNIA IRRIGATION ACT—CONSTITUTIONAL LAW.—The curative provisions of the California Irrigation Act, as amended in 1915 (Stats. 1915, p. 1370), in so far as they purport to prohibit an inquiry upon *certiorari* into the jurisdiction of the board of supervisors in

making its order fixing the boundaries of the district to be bene-
fited, are unconstitutional.

[15] CONSTITUTIONAL LAW—CURATIVE ACTS.—A curative act cannot
cure jurisdictional defects in the establishment of an assessment
district and thus authorize the taking of property without due
process of law, and this is true whether the curative provisions
are found in the statute authorizing the proceedings or in a sub-
sequent statute attempting to validate such a proceeding.

[16] ID.—MADERA IRRIGATION DISTRICT—VALIDATING ACT—CONSTITU-
TIONAL LAW.—The act of the legislature of May 12, 1921 (Stats.
1921, p. 76), validating the organization of the Madera Irriga-
tion District as formed and organized by the board of super-
visors of the county, is on its face violative of article IV, section
25, subdivision 33, of the state constitution, prohibiting a special law
in all cases where a general law can be made applicable, when
considered as a law whereby the legislature exercises its own power
to define the boundaries by ratification of the act of the sub-
ordinate board to which it had delegated the power in the first
instance.

APPEAL from a judgment of the Superior Court of
Madera County.  E. N. Rector, Judge Presiding.  Reversed.

The facts are stated in the opinion of the court.

Edward F. Treadwell and Joseph C. Sharp for Appellant.

Haven, Athearn, Chandler & Farmer, A. L. Cowell and
Stanley Murray for Respondents.

WILBUR, J.—The plaintiff petitioned the superior court
of the county of Madera for a writ of review for the pur-
pose of inquiring into the validity of an order of the de-
fendant board of supervisors calling an election for the
establishment of an irrigation district, to be known as the
Madera Irrigation District.  A demurrer for want of suffi-
cient facts and alleging lack of jurisdiction was interposed
and sustained by the trial court and judgment was rendered
against the plaintiff in pursuance of such ruling on demur-
rer.  The plaintiff appeals from the judgment.

[1] The respondents moved to dismiss the appeal upon
the ground that the question involved has become moot.
This contention is based upon the fact that since the bring-

ing of this suit the plaintiff has sued the Madera Irrigation District in the United States District Court and in doing so has specifically alleged in its complaint therein that the Madera Irrigation District is, and at all times therein mentioned had been, an irrigation district incorporated under the laws of the state of California and under the act known as the California Irrigation District Act. That suit was brought to restrain the alleged improper use of the funds of the district. It is claimed upon the application to dismiss the case at bar that by this action in the United States district court the plaintiff has accepted the benefits of the judgment in the court below sustaining the validity of the incorporation of this district. It is further claimed that the plaintiff by filing in this court a petition for writ of mandate directed against the secretary of the Madera Irrigation District to compel the secretary of the district to permit the inspection of the public writings and records of said district has further acquiesced in and accepted the judgment of the lower court. In a proceeding to enjoin the improper use of the funds of the district or to compel the inspection of its records the plaintiff could not attack the validity of the organization of a *de facto* corporation and for the purposes of those proceedings was not only entitled to proceed upon the theory that defendant was a corporation, but was compelled so to do. It follows that the proceedings taken by the plaintiff and its officers to compel the Madera Irrigation District to comply with the law regulating irrigation districts is not such an admission of the existence of the corporation as would preclude the prosecution of an appeal in this proceeding involving, as it does, the question of the *de jure* existence of the corporation in a direct attack by a review of the validity of the order of the supervisors fixing the boundaries of the district and ordering an election by the people of the district to determine whether or not it should be incorporated. The motion to dismiss this appeal should be denied.

We will proceed to a determination of the merits of the appeal.

The petition for the writ of review herein alleges that the plaintiff's lands lie within the proposed district. The sufficiency of the petition to the board of supervisors and of the notice of the hearing thereof are not questioned except

by the allegations that no evidence was introduced before the board of supervisors in support of the allegations of the petition or to establish the status of the petitioner. The petition alleges some twenty-five particulars wherein it is claimed that evidence was essential to give the board jurisdiction to act in fixing the boundaries of the proposed district and ordering an election and alleges that no evidence whatever was offered upon these matters. It is further alleged that on November 3d, the date of the hearing upon the petition for the formation of the irrigation district, the plaintiff filed written objection to the inclusion of its lands within the district upon the ground that said lands would not be benefited by being included within said district and that said lands were not susceptible of irrigation from the same source or by the same system of works as the remainder of the lands within the boundaries of the said proposed irrigation district.

Without mentioning in detail the various matters upon which it is alleged no evidence was introduced before the board of supervisors, it may be said generally that said objection relates to the sufficiency of the signatures attached to the petition, to the publication of the notice of hearing on said petition, and that no evidence was introduced in support of or opposed to the objections of the petitioner that its lands would not be benefited by the irrigation system described in the petition or by the formation of said district.

In *Imperial Water Co.* v. *Supervisors*, 162 Cal. 14 [120 Pac. 780], it was held that the order of the board of supervisors fixing the boundaries of a proposed irrigation district was a judicial act subject to review by the court upon a writ of *certiorari*. The law, as originally enacted, provided in section 4 for an appeal to the superior court of the county from the order of the board calling the election. That section was declared unconstitutional in *Chinn* v. *Superior Court*, 156 Cal. 478 [105 Pac. 580] (see, also, *Inglin* v. *Hoppin*, 156 Cal. 483, 491 [105 Pac. 582]; *Matter of Bonds of San Joaquin Irr. Dist.*, 161 Cal. 346 [119 Pac. 198].)

The legislature, at an extra session of 1911, amended section 4 of the act (Ex. Sess. 1911, p. 139, c. 36) to read as follows:

"Section 4. A finding of the board of supervisors in favor of the genuineness and sufficiency of the petition and notice shall be final and conclusive against all persons except the State of California upon suit commenced by the attorney-general. Any such suit must be commenced within one year after the order of the board of supervisors declaring such district organized as herein provided, and not otherwise."

[2] It is contended that under this amended section the only way in which the validity of the order and of the formation of the district can be inquired into is in a *quo warranto* proceeding instituted by the attorney-general. The difficulty with respondents' contention in that regard is that the jurisdiction of this court and of the superior court to entertain writs of review is given by the constitution (art. VI, secs. 4, 5), and this power cannot be taken away by the legislature. (*Cameron* v. *Kenfield,* 57 Cal. 550; *Farmers' Union* v. *Thresher,* 62 Cal. 407.; *City of Tulare* v. *Hevren,* 126 Cal. 226 [58 Pac. 530]; *Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640, 652 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 186 [149 Pac. 35].)

In addition to section 4 the California Irrigation Act, as amended in 1915 (Stats. 1915, p. 1370), contains certain curative provisions which will be hereinafter more fully discussed. The section is as follows:

"Sec. 72. Contests. No contest of anything or matter herein provided shall be made other than within the time and manner herein specified, and in any such action all findings of fact or conclusions of said board of directors, or of the board of supervisors upon all matters shall be conclusive, unless such action was instituted within six months after such finding or conclusion was made."

Furthermore, the legislature on May 12, 1921 (Stats. 1921, p. 76), passed an act validating the organization of the Madera Irrigation District as formed and organized by the board of supervisors of said county, which act is in the following words and figures, to wit:

"Section 1. Madera irrigation district, in the county of Madera, State of California, as formed and organized by the board of supervisors of said county, and as now existing, or as the boundaries thereof may hereafter be modified

according to law, is hereby recognized and declared a valid irrigation district, with all the powers and authority vested in irrigation districts, and all proceedngs on formation and organization of said district are hereby approved and in all respects declared valid.''

Before considering the effect of sections 4 and 72, *supra,* of the California Irrigation Act and of the validating act, *supra,* we will first examine the question as to the power of the legislature over the subject matter in the light of the fourteenth amendment to the constitution of the United States and similar provisions in our own constitution prohibiting the taking of property without due process of law.

[3] Where the legislature establishes the boundary of an assessment district it is assumed that the legislature took such evidence and made such inquiry as was necessary in order to determine whether or not the property included in the assessment district would be benefited and its action in establishing the district is conclusive on the court. (*People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 Pac. 207]; *Miller & Lux, Inc.,* v. *Drainage Dist.,* 182 Cal. 252, 265 [187 Pac. 1041]; *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028]; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 69, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes]; *Brookes* v. *City of Oakland,* 160 Cal. 423, 427 [117 Pac. 433].)

[4] Where the fixing of the boundaries of the district to be taxed is left to some commission or to the board of supervisors it is essential that property owners whose property is to be taxed shall be given a hearing upon the question as to whether or not their lands should be assessed at all, that is to say, whether or not such lands would be benefited by the proposed improvement, and also a hearing upon the amount of the assessment to be charged against the property. (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 69, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes]; *Brookes* v. *City of Oakland,* 160 Cal. 423, 426, 428 [117 Pac. 433]; *Argyle* v. *Johnson,* 39 Utah, 500 [118 Pac. 487]; *Book* v. *Thomas,* 61 Wash. 607 [112 Pac. 917]; *Ells* v. *Board of Supervisors,* 38 Cal. App. 480 [176 Pac. 709].) It is immaterial at what stage of the proceedings this opportunity is given so long as the property owner is afforded the opportunity to contest the ques-

tion of benefits and of the amount of the tax to be assessed against his property. In *Fallbrook Irr. Dist.* v. *Bradley, supra,* it was held that the Wright irrigation law of California, then under consideration, similar to the present California irrigation law, gave the opportunity to the property owners whose property was sought to be included in the district to contest the question as to whether or not their lands would be benefited, at the hearing before the board of supervisors on the petition for the formation of the district and that this hearing afforded due process of law to the property owner, and that such opportunity was essential to afford due process of law.

The California Irrigation District Act provides for a hearing before the board of directors sitting as a board of equalization upon the proper valuation of the property within the district (sec. 38), and upon such valuation so determined an *ad valorem* tax is imposed upon all the property within the district for the proposed improvements (sec. 39). The California Irrigation District Act provides (sec. 69) for proceedings by the property owner to contest the validity of the assessment, but it is evidently not intended that this contest should include an inquiry into the validity of the proceedings for the organization of the district, because by section 4 its validity could only be attacked by a *quo warranto* proceeding brought by the attorney-general within one year after the organization of the district, and, furthermore, section 72 provides that findings of fact and conclusions of the board of directors and of the board of supervisors are conclusive unless the action to contest the validity thereof is instituted within six months after the findings or conclusions are made, and assessments are usually made more than six months after the district is formed.

[5] It follows that the only opportunity given the property owner to oppose the inclusion of his lands within the district is at the hearing before the board of supervisors at the time noticed for the hearing upon the petition for the formation of the district and that any denial of such right by the board of supervisors or any statutory provision purporting to make the order of the board conclusive upon the property owner without such hearing having been in fact had is violative of both state and federal constitutions. (*Fallbrook Irr. Dist.* v. *Bradley, supra; People* v. *Van Nuys*

*Lighting Dist.,* 173 Cal. 792, 797 [Ann. Cas. 1918D, 255, 162 Pac. 97].)

In this connection attention should be given to the contention of the respondent with reference to the case of *Fallbrook Irr. Dist.* v. *Bradley, supra.* It is contended that this decision by the United States supreme court had not been followed by this court and that it has been expressly repudiated by this court. It must be confessed that this contention finds support in the opinion in the case of *Henshaw* v. *Foster,* 176 Cal. 507 [169 Pac. 82], wherein it is said:

"Respondents insist that we are here dealing with a matter directly affecting private property. They call attention to the fact that in *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56], the supreme court of the United States declared the necessity for a hearing 'at some time to those interested upon the question of fact whether or not the land of any owner which was intended to be included would be benefited by the irrigation proposed,' and that the Wright Act was upheld upon the express declaration of the court that an appropriate hearing before the board of supervisors is in that act provided. Notwithstanding any expressions in the Fallbrook Irrigation case, we are committed to the reasoning of the Madera District case (92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272]), which was followed in *People* v. *Ontario,* 148 Cal. 625 [84 Pac. 205], long after the decision in the other case had been made. In the opinion in the Madera District case the irrigation district was treated as a public corporation to be invested with certain political duties to be exercised in behalf of the state. That a water district such as the one sought to be established in San Diego County is also such a corporation may not be doubted under the authority of that decision. The statute in its scope is even broader than the Wright Irrigation Act and is quite as complex in its details as is that law. To classify a district created under its sanction with a sewer district such as that described in the Brookes case would be to disregard the distinction pointed out in *Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 Pac. 750]."

The author of the opinion then quotes extensively from *In re Madera Irr. Dist.,* 92 Cal. 296, 323 [27 Am. St. Rep.

106, 14 L. R. A. 755, 28 Pac. 272, 675]. The decision of this court in the Madera Irrigation District case, *supra,* was rendered before the decision of the United States supreme court in *Fallbrook Irr. Dist.* v. *Bradley, supra.* In the Madera Irrigation District case this court, in affirming the validity of the law and the regularities of the proceedings for the formation of that district, placed its decision upon the ground, among other things, that the property owner was not entitled to notice or an opportunity to be heard in the proceedings to include his property within the irrigation district for the reason that the irrigation district is in effect a "public corporation to be invested with certain political duties which it is to exercise in behalf of the state," and that the legislature could fix the boundaries of such a district or authorize them to be fixed without any notice to the property owner whose lands were to be included in the district and that no such notice was required under the due process of law clause of the federal and state constitutions. The supreme court of the United States, however, in the Fallbrook case after considering our decision in the Madera Irrigation District case, expressly held that a judicial determination of the fact that the property included within the district was benefited by the proposed irrigation work was essential in order to comply with the due process of law requirement of the fourteenth amendment to the federal constitution. In that regard the court said:

"The legislature, not having itself described the district, has not decided that any particular land would or could possibly be benefited as described, *and therefore, it would be necessary to give a hearing at some time to those interested upon the question of fact whether or not the land of any owner which was intended to be included would be benefited by the irrigation proposed. . . .*

"Upon the question of fact as to benefits, decided by the board, it is held in the Tregea case that its decision is conclusive. 88 Cal. 334 [26 Pac. 237], *supra.* Whether a review is or is not given upon any of these questions of fact (if the tribunal created by the State had power to decide them, and if an opportunity for a hearing were given by the act), is a mere question of legislative discretion. It is not constitutionally necessary in such cases to give a rehearing or an appeal. *Missouri* v. *Lewis,* 101 U. S. 22 [25

L. Ed. 989] ; *Pearson* v. *Yewdall,* 95 U. S. 294 [24 L. Ed. 436]. . . . '' (Italics ours.)

The supreme court of the United States upheld the Wright Act [Stats. 1887, p. 29] in the Fallbrook case and the proceedings thereunder solely upon the ground that such an opportunity to be heard as was required by the federal constitution was provided for and was in fact given under the statute in question. In dealing with that question the supreme court in the Fallbrook case said:

''Third. We come now to the question of the true construction of the act. Does it provide for a hearing as to whether the petitioners are of the class mentioned and described in the act and as to their compliance with the conditions of the act in regard to the proceedings prior to the presentation of the petition for the formation of the district? Is there any opportunity provided for a hearing upon notice to the land owners interested in the question whether their lands will be benefited by the proposed irrigation? . . .

''When the act speaks of a hearing of the petition, what is meant by it? Certainly it must extend to a hearing of the facts stated in the petition, and whether those who sign it are sufficient in number and are among the class of persons mentioned in the act as alone having the right to sign the same. . . .

''In the case of *People* v. *Hagar,* 52 Cal. 171, 182, it was held that the board of supervisors, on presentation of the petition, was to hear and determine the question of jurisdiction, and whether the allegations of the petition were true. An approval and confirmation of the petition and the establishment of the district was held to be a conclusive judgment by the board that the lands mentioned and in question were swamp lands; that the petitioners held the proper evidences of title thereto, and *that the lands would be benefited by the reclamation.* These jurisdictional facts, it was held, must exist before the district could law fully be established. . . .

''*The parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits, and to have the lands excluded if the judgment of the board be against their being benefited.* Unless the legislature decide the question of benefits itself, the landowner has the right

to be heard upon that question before his property can be taken. This, in substance, was determined by the decisions of this court in *Spencer* v. *Merchant,* 125 U. S. 345, 355 [31 L. Ed. 763, 8 Sup. Ct. Rep. 921, see, also, Rose's U. S. Notes], and *Walston* v. *Nevin,* 128 U. S. 578 [32 L. Ed. 544, 9 Sup. Ct. Rep. 192]. Such a hearing upon notice is duly provided for in the act. . . .

"Thus the act provides for a hearing of the land owner both as to the question whether his land will be benefited by the proposed irrigation, and when that has been decided in favor of the benefit, then upon the question of the valuation and assessment of and upon his land included in the district. As to other matters, the district can be created without notice to any one. Our conclusion is that the act, as construed, with reference to the objections considered under this third head, is unassailable. . . . " (Italics ours.)

[6] This court is, of course, bound by the decisions of the United States supreme court upon the interpretation of the federal constitution and no matter how many decisions may have been subsequently rendered by this court opposing the conclusion of the supreme court of the United States in the Fallbrook Irrigation District case, we would nevertheless be bound to follow the supreme court of the United States rather than our own decisions upon that subject where there is a conflict. We do not find, however, that there is such a conflict.

In *People* v. *Ontario,* 148 Cal. 627 [84 Pac. 205], cited in *Henshaw* v. *Foster, supra,* the court was dealing with the sufficiency of the proceedings for the annexation of territory to a city and it was properly held that no hearing upon the question of proposed benefits was required. The decision of this court in *Henshaw* v. *Foster, supra,* proceeds upon the theory that the municipal water district therein dealt with had powers in addition to those of an irrigation district and partook of the character of a public corporation invested with political duties in behalf of the state and upon that basis sustained the law. It is true that the opinion follows the reasoning of the court in the Madera Irrigation District case (92 Cal. 323 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]), but in so far as it purports to ignore the decision of the United States supreme

court in the Fallbrook Irrigation District case, where that
decision is applicable, it must, of course, be disregarded.
The same is true as to the following *obiter dictum* in *Matter
of Bonds of San Joaquin Irr. Dist.*, 161 Cal. 345, 346 [119
Pac. 198] : ''The legislature having the unquestioned power
to provide for the formation of such districts, might do so
without giving the property-owners any voice in the matter
at all and may, without question, do so, by authorizing the
presentation of a petition signed by a majority of those
who, upon the last equalized assessment-roll, appear as
owners of the property. (*In re Madera Irr. Dist.*, 92 Cal.
320 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272,
675] ; *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373
[103 Pac. 207].) ''

[7] It is no doubt true as held in that case that the
legislature could authorize the formation of an irrigation
district without any preliminary petition whatever, or could
determine the nature and character of the petition, if one
is required, without regard to the property owners in the
proposed district, but the case does not decide, because the
point was not involved, that the property owner was not
entitled to be heard at some stage of the proceedings upon
the question as to whether or not his land is benefited,
where the power to fix the boundaries of the district is
vested by the legislature in a subordinate body, and where
the formation of the district will impose a burden on all
land included in it to pay the cost of a local public im-
provement to benefit such land.

The principle applied in the Fallbrook Irrigation Dis-
trict case by the supreme court of the United States is
well settled and has been constantly adhered to by this
court in its decisions. (*Wilcox* v. *Engebretsen*, 160 Cal.
288, 393 [116 Pac. 750] ; *Brookes* v. *City of Oakland*, 160
Cal. 423 [117 Pac. 433].)

The only difficulty in applying the decisions on this sub-
ject is to determine whether or not the district created by
the subordinate body in pursuance of an act of the legisla-
ture is in its nature a public corporation, the inhabitants
and property owners of which are subject to taxation for
municipal purposes without any hearing as to the benefits
to be derived from the creation and conduct of such a
corporation, or is an assessment district created for the

primary purpose of assessing upon private lands the benefits to be derived thereby from the public improvements for the purpose the district is formed.

[8] In the present case, however, we are not subject to any embarrassment in such application because that question has been conclusively determined by the supreme court of the United States in its holding that an irrigation district organized under the Wright law is such a district as could only be properly formed by notice to the property owners at some stage of the proceedings of the inclusion of their lands within the district and by giving them a hearing before some tribunal having power to decide the matter, to advance and, if possible, sustain their contention that their lands would not be benefited by the proposed improvement.

In considering the curative provisions of the act in question and the provisions of the validating act, these statutes must be construed in the light of the constitutional power of the legislature as determined in the Fallbrook case, and if so construed they operate to deprive the property owner of due process of law, they must be to that extent disregarded as void and of no effect. For the foregoing reasons, section 4 of the act as amended in 1911, above quoted, in so far as it would give conclusive validity to the order of the board of supervisors in the absence of notice and hearing and would deprive the property owner at every subsequent stage of the proceedings of any right to contest the question as to whether or not his lands would be benefited, would be violative of the due process of law clauses of the federal and state constitutions. This defect would not be met by the opportunity afforded to contest the validity of an assessment under section 69, if that section be construed, as we have hereinbefore indicated it should be, to prohibit any inquiry into the question of benefit in contests as to the validity of assessments; unless such opportunity had elsewhere been given.

Section 72 of the act above quoted, in so far as it purports to limit all inquiry into the action of the board of supervisors in forming the district, must also be held unavailing to prevent such inquiry where that board has proceeded without jurisdiction.

The petitioner does not claim that it was prevented from offering testimony to the board of supervisors upon the

question of the irrigability of its land or upon the subject matter of its objection to its inclusion of its lands within the district or that proper notice was not in fact given of the hearing. Its claim is that no evidence was introduced before the board of supervisors of Madera County affirmatively showing that the lands would be benefited by the proposed plan of irrigation or of the publication of notice or of the sufficiency of the signatures to the petition for the formation of the district.

[9] It may be conceded that where proper notice was given and the petitioner was actually present at the time of hearing, presented its objections thereto, and declined to introduce evidence upon the theory that the burden of proof was upon the defendants to establish the irrigability of petitioner's lands and the benefit of the proposed plan of improvement; that a decision by the board after such opportunity had been given to the petitioner would be conclusive upon a collateral attack. But the proceeding herein to review that order is a direct attack.

We now enter upon the question of whether or not upon this proceeding at bar to review the order of the board of supervisors the petitioner can take advantage of the mere failure of proof of the allegation of the petition. Upon this question the defendants contend that the plaintiff has failed to state sufficient facts for the issuance of a writ of review or for the vacation of the order of the board because it has failed to allege the nonexistence of the jurisdictional facts, in that, it is not alleged that the petition for the formation of the district was in any respect faulty, or that the signatures thereto were insufficient, or that the notice of the hearing was not published, or that the plaintiff's lands were not irrigable from the common source, or that such lands would not be benefited by the proposed plan of improvement, but that petitioner has contented itself with the mere allegation that no evidence was offered before the board of supervisors to prove these facts. [10] In reply the plaintiff properly calls attention to the fact that the function of a writ of review is to bring before the court for consideration the proceedings before the inferior tribunal, including the evidence, and that the proceedings for a writ of review is not a proper one in which to contest the truth as to the jurisdictional facts. (*Golden Gate*

*M. Co.* v. *Superior Court,* 65 Cal. 187, 191 [3 Pac. 628];
*Hoffman* v. *Superior Court,* 79 Cal. 475 [21 Pac. 862]; *De
Pedrorena* v. *Superior Court,* 80 Cal. 144 [22 Pac. 71];
*Los Angeles* v. *Young,* 118 Cal. 295 [62 Am. St. Rep. 234,
50 Pac. 534].)    This position is undoubtedly well taken.

The court is limited in its proceedings to review the order
of the board of supervisors to the record there made, and
from that record the jurisdiction of the board to act in the
premises must appear.

[11] It is alleged, and by demurrer admitted, that the
board of supervisors acted upon the hearing without any
evidence upon certain material matters. Whatever the
actual facts may be, or whatever may have been in fact con-
sidered by the board of supervisors as sufficient to justify
their action in the matter, if any showing whatever was
made in support thereof by report of the state engineer, as
required by law (secs. 2, 2a [Stats. 1917, pp. 752, 755;
Stats. 1919, p. 715]), or otherwise, we are bound by the
facts stated in the complaint herein.

We will proceed to examine the matter from that stand-
point, although it would be a much more satisfactory in-
vestigation if we had before us the return of the defend-
ants, and were thus assured that the plaintiff's agent had
not verified the complaint upon the theory that the super-
visors were only authorized to act upon "evidence" within
the strict meaning of that term as used in court proceed-
ings.

In *Stumpf* v. *Board of Supervisors,* 131 Cal. 364 [82 Am.
St. Rep. 350, 63 Pac. 663], it was held that a failure to
prove the sufficiency of the signatures to a petition for the
creation of a sanitary district was fatal to the validity of
the proceedings when presented to the court by a writ of
review.    It was there said:

"The determination of these questions, upon which the
jurisdiction of the board depended, required the exercise of
judicial power, and as the statute did not prescribe the
character of the proof by which they should be determined,
*they must be established in accordance with the rules of evi-
dence recognized by the courts and the common law.*    'An
exception to the rule that the sufficiency of the evidence will
not be reviewed is made when the question is whether juris-
dictional facts were or were not proved.    This exception

arises out of the most important office and function of the writ—the keeping of inferior courts and tribunals within proper bounds. If the decision of the inferior tribunal as to the sufficiency of the evidence to establish jurisdictional facts were not reviewable, the writ of *certiorari* would be of no avail as a remedy against an assumption of jurisdiction. 'And for the purpose of enabling the reviewing court to determine whether jurisdictional facts were established, it will require a return to be made of the evidence upon which such facts are based.' (4 Ency. of Pl. & Pr. 262.) This court has said: 'In all cases it is essential that there be proof of a sufficient petition, inasmuch as without it the board could acquire no jurisdiction to act, and its proceedings would be absolutely void. . . . Upon *certiorari*, though the inferior tribunal is required to certify only matters of record, yet if the jurisdictional facts do not appear of record, it must certify not only what is technically denominated the record, but such facts, or the evidence of them, as may be necessary to determine whatever question as to the jurisdiction of the tribunal may be involved.' (*In re Madera Irr. Dist.*, 92 Cal. 296, 333, 335 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]; citing *Blair* v. *Hamilton*, 32 Cal. 52; *People* v. *Board of Delegates*, 14 Cal. 479; *Lowe* v. *Alexander*, 15 Cal. 300.) . . . '' (Italics ours.)

However, in the case of *Wolfskill* v. *City Council of Los Angeles*, 178 Cal. 610 [174 Pac. 45], this court declined to follow the case of *Stumpf* v. *Board of Supervisors, supra*, in so far as it held that the only evidence which the board could consider upon such a hearing was evidence which would be acceptable in court. The case still stands, however, as authority for the proposition that there must be some sort of evidence or proof not only as to the allegations of the petition but also as to the sufficiency of the signatures thereto. The petition in this case alleges that no such evidence was received.

[12] We have constantly under review proceedings in which various boards and inferior courts are called upon to exercise a special jurisdiction, and it has uniformly been held in such cases, such as proceedings from the Industrial Accident Commission, from the Railroad Commission, from the medical board in cases involving the taking away of the

license of a medical practitioner, in the case of proceedings before the real estate board to deprive a real estate agent of his license, and in contempt proceedings, that the courts will inquire into the question as to whether or not there was any evidence whatever to prove the jurisdictional facts, and in the absence of such evidence have annulled the order of the tribunal whose decision was under review (*People* v. *Board of Delegates,* 14 Cal. 478, 501; *Schwartz* v. *Superior Court,* 111 Cal. 106 [43 Pac. 580]; *Pacific T. & T. Co.* v. *Eshleman,* 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 Pac. 35]; *Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 592 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39]; *Lanterman* v. *Anderson,* 36 Cal. App. 472 [172 Pac. 625]; *Brecheen* v. *Ray L. Riley,* 187 Cal. 121 [200 Pac. 1042]; *Dyment* v. *Board of Medical Examiners* 57 Cal. App. 260, [207 Pac. 409].

In *Schwartz* v. *Superior Court, supra,* it is said that the jurisdiction of this court on review extended not "only to the whole record of the court below, but even to the evidence itself, where necessary to determine the jurisdictional facts," citing *People* v. *Board of Delegates,* 14 Cal. 479; *Lowe* v. *Alexander,* 15 Cal. 301; *Blair* v. *Hamilton,* 32 Cal. 49; *People* v. *Goodwin,* 5 N. Y. 568. In *Los Angeles* v. *Young,* 118 Cal. 295, 298 [62 Am. St. Rep. 234, 50 Pac. 534], it is stated:

"The common-law writ of *certiorari* tried nothing but the jurisdiction, and incidentally the regularity of the proceedings upon which the jurisdiction depends. In many cases, therefore, under such writs, the evidence upon which the court acted in determining its jurisdiction was made a part of the record and reviewed under the writ, but the inquiry was always limited to the evidence before the tribunal whose determination was under review. If the jurisdiction of the inferior tribunal depended upon a question of fact, that fact was never tried *de novo* upon its merits, but the inquiry thereupon was limited strictly to the evidence upon which the inferior tribunal acted," citing *People ex rel. Whitney* v. *San Francisco Fire Dept.,* 14 Cal. 479.

[13] Sections 1 and 2 of the California Irrigation Act as amended (Stats. 1919, pp. 714, 715) contain certain provisions with regard to the character of the evidence upon which the board of supervisors is entitled to act in its order fixing the boundaries of the irrigation district and proposing an election to determine whether such district shall be incorporated. It provides that the equalized assessment-roll or rolls of the county for the last preceding year shall be conclusive evidence of ownership and value of land by the signers of the petition and others, and that a certificate of acknowledgment before a notary public or justice of the peace of any state or an affidavit by any person in the presence of whom such petition was signed shall be sufficient evidence of the genuineness of such signature and residence of the petitioners. Upon the hearing of the petition it is provided that the board of supervisors shall hear the same and shall proceed to determine whether or not said petition complies with the requirements hereinbefore set forth and whether or not the notice required herein has been published as required, and must hear all competent and relevant testimony offered in support of or in opposition thereto. The state engineer is required to make a report to the board of supervisors upon the feasibility of the project (secs. 2, 2a, *supra.*) Under these provisions the report of the engineer, the certificate of acknowledgment or the affidavit referred to in the statute can undoubtedly be considered by the board in reaching its conclusion upon the jurisdictional facts (*Wolfskill* v. *Los Angeles, supra*) and constitute evidence within the meaning of that term as used in proceedings to review their action. We must assume, however, that no such evidence was presented or considered in view of the allegations of the petition for the writ of review herein.

Upon the allegations of the petition a writ of review should have been issued and if it appeared from the return, as alleged, that no showing whatever was made before the board of supervisors in support of the petition, the order of the board of supervisors in question should have been annulled, unless other considerations to be next considered require a different conclusion.

The first question to be so considered is the effect of section 72, hereinabove quoted. This section, if given full

effect, would prevent any contest with reference to the findings and conclusions of the board of supervisors at the time of the fixing of the boundaries of the district except in the manner specified in the act, namely, in a proceeding brought by the attorney-general of the state (sec. 72 and sec. 4, as amended in 1911 [Stats. 1911, p. 139]). But, as we have already shown, section 4, in so far as it deprives the superior court of jurisdiction to review the proceedings of the board of supervisors, is unconstitutional, and section 72, in so far as it attempts to make the findings of the board of supervisors upon the hearing as to the benefits to be derived by the irrigation project conclusive, if construed to prohibit the inquiry upon direct attack in *certiorari* into the question of whether or not the supervisors conformed to the constitutional requirements of due process of law in exercising their jurisdiction, upon such direct attack, is also void because due process of law requires a hearing upon the question of benefits and evidence upon that subject (*Fallbrook Irr. Dist.* v. *Bradley, supra; Stumpf* v. *Board of Supervisors, supra;* see, also, other cases hereinabove cited on that subject). The constitution vests jurisdiction in the superior court in *certiorari,* and hence to review the action of the board of supervisors in fixing the boundaries of the proposed assessment district as at common law (Const. Cal., art. VI, sec. 5; *Camron* v. *Kenfield,* 57 Cal. 550; *Farmers' Union* v. *Thresher,* 62 Cal. 407), and this jurisdiction cannot be taken away by the legislature (see concurring opinion of Mr. Justice Sloss in *Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal., pp. 690, 691, 694 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119], and cases there cited; see, also, *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792, 797; see, also, *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [Ann. Cas. 1918D, 255, 162 Pac. 97], and *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [149 Pac. 35]).

[14] It follows that the curative provisions of the statute in question, in so far as they purport to prohibit an inquiry upon *certiorari* into the jurisdiction of the board of supervisors in making its order fixing the boundaries of the district to be benefited, are unconstitutional.

The respondents contend that where the district has been exercising the powers of a *de facto* corporation, after the

electors of the district have voted for incorporation, it is
too late to inquire into the validity of the order calling the
election by a writ of review.   There is nothing in this con-
tention.   Upon this point respondents quote from a concur-
ring opinion of Mr. Justice Finlayson of the second district
court of appeal, second division, in the case of *Mitchell* v.
*Henry*, 31 Cal. App. Dec. 597 (see, also, 184 Cal. 266 [193
Pac. 522]).   This decision, however, dealt with the annexa-
tion of territory to the city of Glendale, a city of the sixth
class, a proceeding wherein the question of due process of
law is not involved (*People* v. *Town of Ontario*, 148 Cal.
625, 632, 633, 634 [84 Pac. 205]).   Moreover, the decision
of the district court was vacated by an order of transfer
to this court and subsequently decided on other grounds
(*Mitchell* v. *Henry*, 184 Cal. 266 [193 Pac. 502]).

We will next consider the effect of the validating act
passed by the legislature of 1921 (Stats. 1921, c. 75, p. 76).
[15]   The decisions all agree upon the proposition that a
curative act cannot cure jurisdictional defects in the es-
tablishment of an assessment district and thus authorize the
taking of property without due process of law (*People* v.
*Van Nuys Lighting Dist.*, 173 Cal. 792, 797 [Ann. Cas.
1918D, 255, 162 Pac. 97], *supra*).   This is true whether
the curative provisions of the law are found in the statute
authorizing the proceedings or in a subsequent statute at-
tempting to validate such a proceeding (see cases cited in
*People* v. *Van Nuys Lighting Dist.*, *supra*, at pages 297,
298, and in *Oakland Paving Co.* v. *Whittell Realty Co.*,
185 Cal. 113 [195 Pac. 1058]; see, also, *Watkinson* v.
*Vaughn*, 182 Cal. 55 [186 Pac. 753]).   It follows that inas-
much as the defect in the proceedings now under considera-
tion is jurisdictional and that the validating act would
therefore have the effect of depriving the plaintiff of its
property without due process of law, the act is clearly un-
availing to establish the validity of the incorporation of the
Madera Irrigation District considered purely from the
standpoint of a validating or curative act.   This conclusion,
however, does not fully dispose of the question involved in
determining the effect and constitutionality of the validating
act, for the reason that the legislature had the power to
directly create an irrigation district of this magnitude (three
hundred thousand acres), if there was any reason justifying

special legislation for that purpose (Const., art. IV, sec. 25, subd. 33; *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 Pac. 207]; *Miller & Lux* v. *Sacramento & San Joaquin Drainage Dist.*, 182 Cal. 252 [187 Pac. 1041]). Furthermore, if the legislature itself establishes the boundaries of the Madera Irrigation District, the question of due process of law is not involved.

The respondents cite *State* v. *Squires*, 26 Iowa, 340, and subsequent decisions of the supreme court of Iowa as holding that a validating act, although necessarily special and local, is nevertheless not violative of the general constitutional prohibition against local and special legislation where general laws may be made applicable, for the reason that a general law cannot appropriately be made applicable (*Witter* v. *Board of Supervisors of Polk Co.*, 112 Iowa, 380 [83 N. W. 1041]; *McSurely* v. *McGrew*, 140 Iowa, 163 [132 Am. St. Rep. 248, 118 N. W. 415]). These decisions and others cited are based upon the proposition that a curative act *per se* cannot well be general in character. These decisions, however, recognize that a validating act cannot cure jurisdictional defects, but cure only such defects and irregularities as could have been omitted by the legislature in the first instance. The supreme court of Iowa cites Sutherland on Statutory Construction (sec. 483) with approval in *Witter* v. *Board of Supervisors, supra.* The author of that text-book places this limitation upon legislative power and this conclusion is in accord with our own decisions.

We have not so far followed the supreme court of Iowa in its conclusion that such a special curative act is not violative of our constitution (see *People* v. *Van Nuys Lighting Dist., supra*), but even if we go so far, the validating act is void even under the Iowa decisions, as well as under our own. (*People* v. *Van Nuys Lighting Dist., supra.*) When, therefore, respondents rely upon the Iowa decisions to justify such legislation, as permissible because a general law is not applicable, they are met with the proposition that, considered merely as a curative statute, the act is unavailing to cure jurisdictional defects, while considered as an original exercise of legislative power, it is clearly violative of the constitutional prohibition of special legislation for reasons that presently will be more fully stated. In either event the validating act is unavailing to defeat the

plaintiff's effort to secure a review of the action of the board of supervisors.

[16] In considering the constitutionality of the validating act as an act *creating* the Madera Irrigation District, we meet with several difficulties. In the first place the conclusive presumption indulged in by the courts to the effect that the legislature had duly considered the benefits to be derived by the lands included within the district is hardly applicable when the legislature expressly adopts the findings of the board of supervisors as to benefits. In addition, the fact that the legislature by its validating act adopts the proceedings of the board of supervisors for the establishment of a district to derive its powers from the general law for the incorporation of such districts is conclusive evidence that the district in question might be established in accordance with the general law then in force, if properly followed, and is, therefore, a legislative declaration to the effect that the validating act was passed solely for the purpose of correcting errors in the procedure required by a general law in that particular case, and not for the reason that the legislature found it impossible to pass a general law upon the subject, which would authorize the formation of the Madera Irrigation District. This validating act, then, is on its face violative of article IV, section 25, subdivision 33, of the constitution, prohibiting a special law in all cases where a general law can be made applicable, when considered as a law whereby the legislature exercises its own power to define the boundaries of a district by ratification of the act of the subordinate board to which it had delegated the power in the first instance. (In this connection we may refer to the discussion in the recent case of *Mordecai* v. *Board of Supervisors,* 183 Cal. 434, 438 [192 Pac. 40].)

The motion to dismiss this appeal is denied.

The judgment of the superior court is reversed, with instructions to overrule the demurrer and issue a writ of review requiring the defendants to certify the entire record before them, including the reports, affidavits, admissions of the parties, and any information or statements, formal or informal, upon which they acted in reaching the conclusions embodied in their orders fixing the boundaries of the Madera Irrigation District, and in determining the suffi-

ciency of the petition for the formation of such district, and that upon return the court proceed to determine whether or not the orders sought to be reviewed should be annulled.

.Shaw, C. J., Waste, J., Shurtleff, J., Lawlor, J., and Sloane, J., concurred.